Arturo SANTANA, Appellant,

v.

The STATE of Texas.

No. 1780–00.

Court of Criminal Appeals of Texas.

Oct. 31, 2001.

James D. Lucas, El Paso, for Appellant.

Richard B. Dulany, Assist. DA, El Paso, for State.

## OPINION

MEYERS, J., delivered the unanimous opinion of the Court.

Appellant was charged by information with Class "A" misdemeanor criminal mischief. TEX. PEN.CODE ANN. § 28.03 (Vernon Supp.2001). Trial was to the court. After finding appellant guilty, the court sentenced him to 180 days in jail, and ordered him to pay a fine of $1,000. The 180 day sentence was probated for a period of eighteen months, and a portion of the fine was also probated. In addition, as conditions of his probation, appellant was required to perform 100 hours of community service and pay $1,250 in restitution. We granted appellant's petition for discretionary review to consider (1) whether the evidence used to support appellant's conviction for Class "A" criminal mischief was legally sufficient under Penal Code section 28.03 without a showing of pecuniary loss; and (2) whether there was a fatal variance between the information and the proof at trial.

### I.

The charging instrument in this case alleged that on or about February 18, 1998, and before the filing of the information, appellant:

did then and there intentionally and knowingly and without the effective consent of the owner, Antonio Lara, tamper with tangible property belonging to said owner, namely an electrical meter device and did intentionally and knowingly divert in whole and in part electrical power from being correctly registered by said metering device, and thereby did cause pecuniary loss and substantial inconvenience to said owner, and the

amount of pecuniary loss was less than $1,500. . . .

The evidence introduced by the State at trial showed that on February 18, 1998, a service crew from El Paso Electric Company went to an address at 12808 McCracken Road in El Paso County to remove an electric meter. According to company records, the meter had been disconnected since March 24, 1994. However, an investigation of the property revealed that power was reaching the building interior through an illegal tap on El Paso Electric Company's wires.

Once the employees on the service crew realized that there was an illegal tap, they cut off the electrical supply from inside a transformer on El Paso Electric's 40 foot electric pole. They also contacted the El Paso County Sheriff's Department. Appellant was determined to be the party responsible for the address.

After linking appellant to the McCracken address, El Paso Electric met with appellant and negotiated a deferred payment agreement. El Paso Electric calculated that appellant had used a total of 1850 kilowatt hours, and that his total debt to the company was $5,458.44. The agreement provided that appellant would pay El Paso Electric an initial payment of $1,458 to reestablish service, and that 20 additional payments of $200 would be included in his monthly statements. No evidence was introduced on whether or not appellant was in compliance with the agreement, or whether or not he had paid his debt in part or in full. At the close of the evidence, the court found appellant guilty of the Class "A" misdemeanor offense of criminal mischief and sentenced him in the manner described previously.

### II.

Appellant argued on direct appeal that the evidence was legally insufficient to

support his conviction for Class "A" misdemeanor criminal mischief because the State did not make a showing that he had caused pecuniary loss. Relying on *Howlett v. State*, 994 S.W.2d 663, 667 (Tex. Crim.App.1999), the Court of Appeals held that the State could support a Class "A" criminal mischief conviction by proving *either* that the actor caused pecuniary loss to the complaining party *or* by proving that the actor had caused substantial inconvenience to the complaining party. *Santana v. State*, No. 08–99–00154–CR, slip op. at 6, 2000 WL 1207195 (Tex.App.—El Paso Aug.25, 2000) (not designated for publication). Because the State had proven that appellant caused substantial inconvenience, the evidence was legally sufficient. *Id.* The court declined to address appellant's argument that the State was required to demonstrate pecuniary loss to sustain a Class "A" misdemeanor conviction, stating "we need not respond to this contention because we find that Appellant's actions caused substantial inconvenience to the owner or a third person." *Id.*

Appellant argues that the Court of Appeals' reliance on *Howlett* was misplaced, because *Howlett* addressed a prior version of Penal Code § 28.03, which specified that diverting public power supply (or other public service)[1] was punishable "regardless of the amount of pecuniary loss." Because this language does not appear in the current version of § 28.03, appellant asserts that the State is required to prove pecuniary loss, and it no longer has the option of proving either pecuniary loss *or* substantial inconvenience as it did under *Howlett*.

---

**1.** The section under which appellant was punished, § 28.03(b)(3)(B), outlines the punishment in cases where public services are impaired, interrupted or diverted. Appellant was prosecuted for diverting public power supply. Therefore, our discussion in this

The State argues that *Howlett* remains the controlling precedent for this case, and that the prosecution may properly prove either substantial inconvenience or pecuniary loss in order to support a conviction for criminal mischief in public power supply diversion cases. According to the State, the criminal mischief statute was revised in 1993, not to add a pecuniary loss requirement, but to provide an enhanced range of punishment. Specifically, the State explains that prior to the amendments, all public power supply diversion offenses were punished as third degree felonies. Under the amended version of the statute, there are seven different punishment categories available.

### III.

Penal Code § 28.03, *Criminal Mischief,* provides in part:

(a) A person commits an offense if, without, the effective consent of the owner:

 (1) he intentionally or knowingly damages or destroys the tangible property of the owner;

 (2) he intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person; or

 (3) he intentionally or knowingly makes markings, including inscriptions, slogans, drawings, or paintings, on the tangible property of the owner.

(b) [A]n offense under this section is:

 (1) a class C misdemeanor if:

opinion is centered primarily on public power supply diversion cases. We are, however, discussing the proper punishment for any of the types of offenses mentioned in subsection (b)(3)(B).

(A) the amount of pecuniary loss is less than $50; or

(B) except as provided in Subdivision (3)(B), it causes substantial inconvenience to others;

(2) a Class B misdemeanor if the amount of pecuniary loss is $50 or more but less than $500;

(3) a Class A misdemeanor if the amount of pecuniary loss is:

(A) $500 or more but less than $1,500; or

(B) less than $1,500 and the actor causes in whole or in part impairment or interruption of public communications, public transportation, public water, gas, or power supply, or other public services, or causes to be diverted in whole, in part, or in any manner, including installation or removal of any device for any such purpose, any public communications, public water, gas, or power supply.

TEX. PEN.CODE ANN. § 28.03 (Vernon Supp. 2001). *See* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 924, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3629.

Appellant was convicted under subsection (a)(2) for "intentionally or knowingly tamper[ing] with the tangible property of the owner and caus[ing] pecuniary loss or substantial inconvenience to the owner or a third person." Both parties point out that this subsection was unchanged by the amendments of 1993. The dispute centers around subsection (b)(3), which provides that criminal mischief is a Class "A" misdemeanor if the actor causes pecuniary loss between $500 and $1,500, or if the pecuniary loss is less than $1,500 and the actor interferes with, impairs or diverts public services. TEX. PEN.CODE ANN.

§ 28.03(b)(3) (Vernon Supp.2001). The question before us, then, is whether the plain language of subsection (b)(3)(B) permits a defendant to be convicted of class "A" misdemeanor criminal mischief for tampering with a public service without a showing of pecuniary loss.

 A reviewing court should always focus its attention on the "literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim. App.1991). Where the language of a statute is unambiguous, we give effect to the plain meaning of its words unless doing so would lead to absurd results. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim. App.1997). Our consideration of legislative history is limited. *See, e.g. Boykin*, 818 S.W.2d at 786–87 (in construing statute, reviewing court is permitted to consider extra-textual factors such as legislative history only where statute is ambiguous or plain language would lead to absurd results).

As stated previously, the general definition of the offense with which appellant was charged, contained in subsection (a)(2), explicitly permits a showing of *either* "pecuniary loss *or* substantial inconvenience." (Emphasis added). The other two general definitional provisions of subsection (a) require a showing of some kind of damage to the owner's property. *See* TEX. PEN.CODE ANN. § 28.03(a)(1) (damage or destruction to property); § 28.03(a)(3) (markings or inscriptions). The definitional provisions in subsection (a) are followed by the punishment classifications in subsection (b).

Not all of the punishment classification sections refer to both substantial inconvenience and pecuniary loss. Subsection (b)(1), which provides the requirements for

rendering the offense a Class "C" misdemeanor refers to both, however. It provides that the offense is a Class "C" misdemeanor if the amount of pecuniary loss is less than $50 *or "except as provided in Subdivision (3)(B),* it causes substantial inconvenience to others."* (Emphasis added). In other words, if the substantial inconvenience caused is *not* of the level or type described by subsection (b)(3)(B), then it may be classified under subsection (b)(1)(B) as a Class "C" misdemeanor. Thus, while subsection (b)(3)(B) does not explicitly refer to "substantial inconvenience," it is clear from the reference to subsection (b)(3)(B) in subsection (b)(1)(B) that the activities described therein are a type of substantial inconvenience that are unique and should be classified as a Class "A" misdemeanor.

█ When read in light of this specific reference, subsection (b)(3)(B) means that criminal mischief is a Class "A" misdemeanor if the pecuniary loss is less than $1,500 and the substantial inconvenience falls within the described activities: ". . . in whole or in part impairment or interruption of public communications, public transportation, public water, gas, or power supply, or other public service, or caus[ing] to be diverted in whole, in part, or in any manner, including installation or removal of any device for any such purpose, any public communications, public water, gas, or power supply." Accordingly, the language of subsection (b)(3) allows a conviction for Class "A" misdemeanor criminal mischief upon a showing of pecuniary loss (more than $500 or less than $1,500), § 28.03(b)(3)(A), *or,* if the pecuniary loss is less than $1,500, there is substantial inconvenience of the type described in subsection (b)(3)(B).

This construction is consistent with previous legislative distinctions between ordinary criminal mischief and criminal mischief where the actor tampers with or otherwise affects public services. In *Williams,* we noted that because the Legislature punished criminal mischief for interfering with or impairing public services without regard to pecuniary loss, it intended such offenses to be "a type of 'substantial inconvenience' which warranted greater penalty." *Williams,* 596 S.W.2d at 865.

In addition, although appellant attaches great significance to the fact that the Legislature amended § 28.03 in 1993 and to the fact that the words "regardless of the amount of pecuniary loss" are no longer in the statute, there is nothing in the language of the statute to indicate that the Legislature's *removal* of the words "regardless of the amount of pecuniary loss" automatically translates into the *addition* of a minimum loss requirement.[2] The Legislature is well-versed in the mechanics of establishing minimum pecuniary loss requirements. The subsection directly preceding that of which the appellant com-

---

**2.** The Legislature made amendments to § 28.03(b)(3) that took effect on September 1, 2001. Act of May 23, 2001, 77th Leg., R.S., ch. 747 § 1, sec. 28.03, 2001 Vernon's Sess. Law Serv. 1384. The 2001 amended version of the statute divides Class "A" misdemeanors into three categories. The first category encompasses criminal mischief offenses that occasion pecuniary loss between $500 and $1,500. *Id.* at 1384 (to be codified as § 28.03(b)(3)(A)(i)). The second category addresses the diversion, impairment or interruption of public services other than water. *Id.*

(to be codified as § 28.03(b)(3)(A)(ii)). This subsection retains the $1,500 pecuniary loss ceiling from the version of § 28.03(b)(3)(B) at issue in the instant appeal. The Legislature also created a separate category of Class "A" misdemeanor criminal mischief for cases in which the actor impairs, interrupts or diverts a public water supply. *Id.* (to be codified as § 28.03(b)(3)(B)). Offenses in this new category are punished "without regard to amount of pecuniary loss." *Id.* We do not comment on the meaning of the amended version of the statute, because that issue is not before us.

plains, subsection (b)(3)(A), contains precisely such a requirement. It provides that criminal mischief will be punished as "a Class A misdemeanor if the amount of pecuniary loss is . . . $500 or more but less than $1,500." The Legislature could have included such a minimum loss requirement in subsection (b)(3)(B), but it chose not to.

Under the scheme established by Penal Code § 28.03, the prosecution need not prove a minimum pecuniary loss to punish criminal mischief as a Class "A" misdemeanor under subsection (b)(3)(B) because of the particular conduct targeted by the subsection.[3] In subsection (b)(3)(B), the Legislature proscribed tampering with a public utility as conduct that is harmful in and of itself. The harm occasioned by that conduct is significant enough that if the State can prove either substantial inconvenience or pecuniary loss, the State can punish the conduct more harshly than it can ordinary criminal mischief that occasions a loss of less than $1,500.

For the reasons above, the disposition of the El Paso Court of Appeals was correct.[4] Therefore, we affirm the judgment of the El Paso Court of Appeals on appellant's first ground for review and base our holding on the plain language analysis of subsection (b) above.

## IV.

In his second ground for review, appellant alleges that the evidence was legally insufficient to support his conviction because there were variances between the allegations in the information and the evidence offered at trial. The Court of Appeals held the alleged variances were not fatal to appellant's conviction because they were not material, inasmuch as appellant did not demonstrate that he was surprised or prejudiced by them. Slip. op. at 7.

The information in this case alleged that appellant:

> did . . . intentionally and knowingly and without the effective consent of the owner, Antonio Lara, tamper with tangible property belonging to said owner, namely an electrical meter device and did intentionally and knowingly divert in whole and in part public electric power passing through the metering device and prevent public electrical power from being correctly registered by said metering device, and thereby did cause pecuniary loss and substantial inconvenience to said owner, and the amount of pecuniary loss was less than $1,500.

On direct appeal, appellant argued that there were two variances between the allegations in the information and the proof offered at trial. First, he alleged that he could not have diverted power "passing

3. Although there is not a minimum pecuniary loss in subsection (b)(3)(B), it appears that there is a maximum. The subsection specifies that the pecuniary loss be less than $1,500. Appellant does not dispute that the evidence of pecuniary loss demonstrates an amount *beneath* the statutory ceiling of $1,500.

4. Despite reaching the correct result, the Court of Appeals relied on *Howlett* without addressing whether it was still controlling precedent for the amended version of § 28.03. The *Howlett* court addressed whether the inclusion of "substantial inconvenience" in subsection (a)(2) meant that the element of pecuniary loss had been eliminated from the statute. The court held that the element of pecuniary loss had not been eliminated from the statute, and that even though the prosecution had alleged pecuniary loss and substantial inconvenience conjunctively in the indictment, it had the burden of proving either of them. *Howlett*, 994 S.W.2d at 667. The holding of *Howlett* has little relevance to this case. Neither party in this case disputes that the State has the option of proving either substantial inconvenience or pecuniary loss under subsection (a)(2); the dispute centers on the applicability of subsection (a)(2) to subsection (b)(3).

through the metering device," because the meter was disconnected in 1994 and there was, therefore, no power passing through it. Second, he alleged that he did not prevent power from being correctly registered by the meter because he never tampered with the meter itself.

The Court of Appeals expressed doubt as to whether there were any variances in this case. In response to the first alleged variance, the court stated "[i]t is clear that if a meter has been bypassed, no electricity will pass through it." Slip. op at 7. The court also seemed to dismiss the second alleged variance by stating, "[c]ertainly, Appellant caused a faulty registration on the meter because he bypassed it notwithstanding the fact it was disconnected." *Id.*

Nevertheless, the court did not reject the alleged variances outright. The court relied on *Stevens v. State*, 891 S.W.2d 649, 650 (Tex.Crim.App.1995) to explain that only a material variance is fatal, and that in order for a variance to be material, it must mislead a party to his prejudice. Slip op. at 7. The court held that because appellant made no claim that he was surprised, prejudiced or misled by the asserted variances, they were not material. *Id.*

■ Appellant argues that any variance between the indictment and the proof offered at trial is fatal. To hold otherwise, he argues, is to unfairly impose upon him an affirmative duty to prove surprise and prejudice and to require him to waive his Fifth Amendment rights and show how he was surprised or prejudiced on the record. He also asserts that when the State goes beyond the statutory elements of an offense in its allegations, it is bound to prove any allegations that are unnecessarily descriptive of an element of the offense. The State points out that our cases have not only imposed the duty to prove prejudice on the party asserting that his rights have been prejudiced, but that as a practical matter, only the party who asserts he has been prejudiced is in a position to explain how.

■ In variance law, it is well-settled that the burden of demonstrating surprise or prejudice rests with the defendant. *See Human v. State*, 749 S.W.2d 832, 837 (Tex. Crim.App.1988) (holding variance not fatal where cause number of conviction alleged in indictment differed slightly from cause number of actual conviction, and stating that "appellant has never asserted that he was not given sufficient notice through the pleadings of what the State intended to prove, that he was ever surprised, or that he was misled to his prejudice by the discrepancies that existed between the State's allegations and its proof"); *Cole v. State*, 611 S.W.2d 79, 82 (Tex.Crim.App. 1981) (holding "[d]espite appellant's general contention that the variance misled him and prejudiced the preparation of his defense, we are unable to say that he has shown such surprise or prejudice as to make it a fatal variance"); *Plessinger v. State*, 536 S.W.2d 380, 381 (Tex.Crim.App. 1976) (admonishing "[w]hile the carelessness here involved is not to be condoned, we are unable to say that appellant has shown surprise or that he was misled to his prejudice"). Thus, the Court of Appeals properly required appellant to demonstrate how he had been prejudiced by any variances in this case.

Moreover, by requiring appellant to demonstrate prejudice, the Court of Appeals was not requiring appellant to waive his Fifth Amendment rights and prove prejudice on the record. When the court stated that appellant had not claimed that he was surprised, prejudiced or misled by the asserted variances, the court was referring to the fact that the appellant, through counsel, made no allegations that he had been unable to prepare a defense, or that prosecution under the deficiently

drafted information would subject him to the risk of subsequent prosecution for the same offense. The court properly placed on appellant the burden of demonstrating prejudice in his direct appeal; appellant's Fifth Amendment rights were not thereby implicated.

■ Appellant also argues that if the State makes unnecessarily specific allegations in the charging instrument, it is bound to prove the additional allegations. This assertion is a restatement of what was known as the *Burrell* exception[5] to the surplusage rule. According to the general rule of surplusage, "allegations which are not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are treated as surplusage" and disregarded. *Gollihar*, 46 S.W.3d at 249–250 (citing *Whetstone v. State*, 786 S.W.2d 361, 364 (Tex.Crim.App.1990)). According to the *Burrell* exception, however, if the State alleged a necessary person, place, or thing with unnecessary particularity, the State was required to prove all circumstances of the description. *Id.* at 250 (citations omitted).

We explicitly overruled the surplusage rule and the *Burrell* exception in *Gollihar*. 46 S.W.3d at 256–57. We held that in the case of an alleged variance between the evidence presented at trial and the allegations in the charging instrument, the applicable test is one of materiality:

A variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the de-

fendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Id.* at 257.

■ The test for materiality, then, involves a two-pronged inquiry into whether a defendant's substantial rights have been prejudiced. The El Paso Court of Appeals determined that appellant had been sufficiently informed of the charges against him to prepare an adequate defense. The court noted that the object of the variance doctrine is to avoid surprise. Slip. op. at 7. It went on to hold that because appellant never alleged surprise or prejudice, any variances in his case were not material. *Id.*

The Court of Appeals did not, however, specifically address whether prosecution under the allegedly deficiently drafted information would subject appellant to subsequent prosecution for the same offense. Nevertheless, prosecution under this information would not subject appellant to the risk of subsequent prosecution for the offense charged. As we pointed out in *Gollihar*, if prosecuted again, appellant may avail himself of the entire record and not merely the charging instrument. *Gollihar*, 46 S.W.3d at 258. It is clear from the record that the commission of this offense had nothing to do with whether or not the power supply passed through the meter before, while, or after it was diverted-or whether he tampered with the meter itself, rather than the electric company's wires. The offense here was the diversion itself. Therefore, appellant could not be prosecut-

---

5. We have referred to this exception simply as the *"Burrell* exception" because *Burrell v. State*, 526 S.W.2d 799 (Tex.Crim.App.1975) is credited with its origination. *Gollihar v. State*, 46 S.W.3d 243, 250 (Tex.Crim.App. 2001).

ed again for diverting the power supply that forms the substance of this charge.

## V. Conclusion

For these reasons, the Court of Appeals properly held that appellant caused substantial inconvenience by diverting public power supply and that any variances between the information and the proof offered at trial were not material. The judgment of the Court of Appeals is affirmed.