# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00713-CV

### In the Matter of D. P.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-18,744, HONORABLE WILLIAM D. KING, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, appellant D.P. was adjudicated delinquent based on the offense of assault on a public servant. *See* Tex. Pen. Code Ann. § 22.01(b)(1) (West Supp. 2004). The court committed appellant to the custody of the Texas Youth Commission. In one issue on appeal, appellant contends that there was a material variance between the state's allegations in the original petition and the evidence adduced at trial, which was substantial, misleading and prejudicial and rendered the evidence legally insufficient to support appellant's adjudication of delinquency. We will affirm the trial court's judgment.

### Factual and Procedural Background

In September 2002, while residing at the Travis County Leadership Academy (the Academy), appellant made a phone call to someone who was not on his approved list. After one of appellant's peers confronted him about the illicit phone call, a group of Academy residents engaged in a "huddle-up," a process used at the Academy to confront negative behavior. During the "huddle-

up," the participants stand in a circle and attempt to talk through a problem. During this particular "huddle-up," appellant kept telling his peer that he did nothing wrong, but the peer insisted that appellant confess to making the illicit phone call. According to Vicki O'Hara, a residential treatment officer at the Academy, the appellant "lost it" when his peer refused to believe him.

Michael Botello, a residential treatment officer at the Academy, was the target of the assault. He testified that he saw appellant make fists with his hands and begin cursing. Such aggressive behavior in the "huddle-up" was against Academy rules. Botello approached appellant, told him to take a time-out, and began walking him to the time-out room. When they came to the door, appellant turned around and started swinging his arms at Botello. Botello immediately grabbed appellant and wrestled him onto his back on the floor. Before Botello grabbed appellant's arms, appellant hit Botello in the face two times. After restraining appellant's arms, Botello rolled appellant onto his stomach and put him into a primary restraint hold, a maneuver used to restrain juveniles who become violent. While being held in this position, appellant began scratching at Botello's side until O'Hara restrained appellant's hands. Four other Academy officers came to the scene to help control appellant. They held appellant down for twenty minutes until appellant said he was calm, and they released him. Appellant then backed up to a wall, raised his fists, and said, "All right, what's up now, what do y'all want to do now." The officers restrained appellant for another fifteen minutes.

When asked whether he felt any pain from the punches, Botello testified that he did not initially feel the impact of being hit. He said there was no bruising on his face, and he did not recall observing any redness after the incident. While appellant's hands were at his sides as he was

2

being held on the floor, Botello said he was trying to "punch me, scratch me on the side." When asked, "Did that hurt at the time?," he answered, "Yes." He said appellant's actions physically hurt him at the time and left scratches. When asked what appellant used to scratch him, Botello said, "His fingers, his hands." The defense had no questions for Botello.

James Richard, a nurse at the Academy, was one of the participants in restraining appellant. He said that appellant was kicking Botello "rather violently" and attempting to "claw and scratch him." Richards said that the punches struck Botello in the head, the back of the head, and the top of the neck area. He observed that appellant had several abrasions on his body. Dionecia Garcia, another staff member who participated in restraining appellant, testified that during the time appellant was being restrained, he was constantly threatening the staff and the boy who reported his phone call. When released from the restraint, appellant backed up against a wall and assumed a threatening posture. As they restrained appellant a second time, Garcia was hit twice in the head with an elbow.

After the prosecution rested, the defense moved for a directed verdict, claiming that the State had not proved the element of bodily injury or that appellant knew that Botello was a public servant. The court overruled the motion for directed verdict.

**Discussion**

In his only issue on appeal, appellant contends there was a material variance between the State's allegations in the original petition and the evidence adduced at trial; that variance was substantial, misleading and prejudicial and rendered the evidence legally insufficient to support appellant's adjudication of delinquency.

3

The court of criminal appeals has held that a variance between a charging instrument and evidence adduced at trial is a legal sufficiency issue. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Such an issue arises when the State proves a defendant guilty of a crime, but the evidence shows that the crime was committed in a manner that varies from the allegations in the indictment; if such a variance is material, the evidence may be insufficient to sustain the conviction. *Id. Gollihar* rejected the surplusage doctrine, which formerly required the State to prove an "extra or unnecessary allegation [that] 'is descriptive of that which is legally essential to charge a crime.'" *Id.* at 250 (quoting *Eastep v. State*, 941 S.W.2d 130, 134 n.7 (Tex. Crim. App. 1997)). The *Gollihar* court held that a variance is fatal only if it is material and if it prejudiced the defendant's "substantial rights" by denying him the ability to adequately prepare a defense or by exposing him to the risk of being prosecuted later for the same crime. *Id.* at 257 (citing *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)).[1]

Although this Court has noted that a juvenile adjudication proceeding is a quasi-criminal proceeding, *see In re M.S.*, 940 S.W.2d 789, 790-91 (Tex. App.—Austin 1997, no writ), juvenile proceedings generally are governed by the rules of civil procedure and the family code. Tex. Fam. Code Ann. § 51.17 (West Supp. 2004); *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002); *In re L.M.*, 993 S.W.2d 276, 280 n.3 (Tex. App.—Austin 1999, pet. denied); *In re O.C.*, 945 S.W.2d 241, 243 (Tex. App.—San Antonio 1997, no writ). Under the rules of civil procedure, an alleged variance between the pleadings and proof is evaluated by considering whether the variance is substantial,

---

[1] Although the State discusses the jeopardy prong of *Gollihar*, appellant does not contend that the variance exposes him to double jeopardy. Accordingly, we do not discuss that aspect of variance analysis.

misleading, and prejudicial. *O.C.*, 945 S.W.2d at 243 (citing *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex. 1980)); *In re A.B.*, 868 S.W.2d 938, 942 (Tex. App.—Fort Worth 1994, no writ).

In this case, the original petition stated that the appellant "on or about the 9th day of September, 2002, in Travis County, State of Texas . . . did then and there knowingly, intentionally, and recklessly cause bodily injury to Michael Botello, a public servant, by striking the said Michael Botello with his hand, while Michael Botello was lawfully discharging an official duty and when the said [appellant] knew Michael Botello was a public servant." Appellant contends that his rights were prejudiced because the prosecution switched to an alternate theory of guilt midway through trial by proving that appellant caused bodily injury by scratching appellant with his hand rather than striking him with his hand.

Appellant claims that no definition of the word "strike" includes the word "scratch," relying on its absence from fifty-seven definitions of "strike." *See American Heritage Dictionary* 1276 (William Morris ed., New College Edition 1976). Appellee counters with the definition of "strike" as to "penetrate or pierce," relying on the *American Heritage Dictionary* (Joseph P. Pickett ed., 4th ed. 2000).[2] "Strike" also means to come into forceful contact with or collide with. *Webster's Third New International Dictionary* 2262 (Philip B. Gove ed., 1986). Appellant has not demonstrated how he was surprised or mislead or how his trial preparation was affected by an allegation of "striking" with his hand and proof that the bodily injury was caused by "scratching"

---

[2] "[T]o pierce or penetrate" is also definition nine in *Websters Third New International Dictionary* 2262 (Philip B. Gove ed., 1986).

5

using appellant's hands and the fingers that are part of his hands. Similarly, one can also read the word "strike" to mean that the appellant was accused of causing bodily injury by his hands colliding or coming into forceful contact with Botello. Again, appellant has not demonstrated how he was surprised or mislead. The record indicates that appellant did not raise the variance issue until his motion for new trial. All of the participants in the altercation testified; although appellant chose not to cross-examine Botello, he cross-examined other witnesses. Appellant did not object to the testimony concerning appellant kicking and scratching Botello while in the restraint hold as well as punching him.

This case is distinguishable from *L.G.R. v. State*, on which appellant relies. *See* 724 S.W.2d 775, 775 (Tex. 1987). In *L.G.R.*, the State charged that the defendant had intentionally set fire to a building. *Id.* At trial, the jury charge authorized conviction if the jury found that defendant had intentionally set fire to a boxcar outside the building. Because the State failed to allege that the defendant had set fire to a boxcar, the defendant was prejudiced in adequately preparing a defense. *Id.* at 776. Without knowing that the State would proceed under a theory of transferred intent, the defendant could reasonably have believed that he only intentionally set fire to the boxcar and that this precluded him from being guilty for intentionally setting fire to the building. *Id.*

In contrast, in this case, the State alleged that appellant inflicted bodily injury by using his hands. The evidence showed bodily injury by use of appellant's hands. The jury was so charged. There was no change in the State's theory and proof that appellant inflicted bodily injury by using his hands. Appellant has not carried his burden of showing that he was harmed by the variance. *See Santana v. State*, 59 S.W.3d 187, 194 (Tex. Crim. App. 2001) (burden of demonstrating surprise or

6

prejudice rests with defendant). We therefore hold that any variance that may have existed between the State's petition and the evidence presented at trial was not fatal.[3]

The gravamen of appellant's complaint really is that the State did not prove the element of bodily injury. Appellant believes that the scratches inflicted on Botello and his testimony that he felt pain from appellant's activities with his hands are insufficient to establish bodily injury. The definition of bodily injury is "physical pain, illness, or any impairment of physical condition." Tex. Pen. Code Ann. § 1.07(a)(8) (West Supp. 2004). This definition is purposefully broad, seeming to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching. *See Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (assailant grabbed wallet and victim's fingers and twisted, leaving bruise on wrist, victim testified she suffered pain; adequate to show bodily injury although not struck or pushed down by assailant); *Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975) (physical pain when briefcase grabbed, arm twisted back leaving small bruise); *Salley v. State*, 25 S.W.3d 878, 881 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (police officer found appellant crying and in pain, her hair was "messed up in back," and she said defendant hit her in the head with his fist; sufficient evidence to show bodily injury); *cf. In re M.C.L.*, 110 S.W.3d 591, 600 (Tex. App.—Austin 2003, no pet.) (evidence insufficient to show bodily injury from juvenile kicking officer when only evidence of injury to officer was cuts from glass shards from juvenile breaking window during struggle to force juvenile

---

[3] The supreme court has not decided whether the *Gollihar* standard should apply to juvenile adjudication proceedings. However, we need not address this question here. Even if we assume that *Gollihar* applies, appellant has not explained how his substantial rights were prejudiced by the alleged variance. There is no evidence that he was unable to prepare an adequate defense. *See Santana v. State*, 59 S.W.3d 187, 194-95 (Tex. Crim. App. 2001).

into police car). "In fact, the degree of injury sustained by a victim and the 'type of violence' utilized by an accused appear to be of no moment . . . ." *Lane*, 763 S.W.2d at 786. Here, there is testimony concerning pain inflicted by appellant's hands making forceful contact with Botello during the struggle when appellant was punching and scratching Botello, testimony that abrasions were observed, and testimony concerning residual scratch marks on the skin which indicated some degree of penetration of the skin. The State proved the element of bodily injury.[4]

## Conclusion

Appellant failed to establish a fatal variance between the State's pleading and proof. Accordingly, sufficient evidence supported his adjudication as delinquent based on the offense of assault on a public servant. We overrule his only issue and affirm the trial court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: May 6, 2004

---

[4] The State did not charge appellant with an offense requiring the State to prove *serious* bodily injury. *See* Tex. Pen. Code Ann. § 1.07(a)(46) (West Supp. 2004) (serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ).