IN THE 
COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0470-07




ARTHUR LEE WILLIAMS, Appellant

v.


THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FROM THE NINTH COURT OF APPEALS


MONTGOMERY COUNTY




Meyers, J., delivered 
the opinion of the Court in which Womack, Keasler, Hervey, and Holcomb, JJ., 
joined. Keller, P.J., joined except for Footnote 2. Womack, J., filed a 
concurring opinion. Price and Cochran, JJ., concurred in the judgment. Johnson, 
J., dissented. 

O P I N I O 
N 


Appellant, Arthur Lee 
Williams, was convicted of tampering with physical evidence under section 
37.09(a)(1) of the Texas Penal Code and sentenced to twenty-five years of 
confinement. 
(1) Appellant appealed and the court of appeals affirmed. We granted 
review to consider the legal sufficiency of the evidence. We will 
affirm.
I. 
FACTS 
A police officer 
patrolling a high-crime neighborhood followed a car occupied by Appellant and 
Darrell Fields. Fields parked on the wrong side of the street in front of a 
house known by the officer to be a crack house. The officer, Michael Stowe, 
stopped behind the car. As Officer Stowe approached the car, he observed 
Appellant in the front passenger seat, moving his hands around his waistband, 
which caused Officer Stowe to suspect that Appellant could be concealing a 
weapon. Officer Stowe performed a weapons pat-down on both Fields and Appellant. 
During the pat-down of Appellant, Officer Stowe heard an object hit the ground. 
Looking down, Officer Stowe recognized the fallen object as an intact crack 
pipe. In that instant, Appellant stomped on the crack pipe, breaking it into 
pieces. 
At trial, the 
State presented the pieces of the pipe Officer Stowe was able to collect that 
night, including a copper mesh filter and broken glass. The State also offered, 
as a demonstrative exhibit, an intact crack pipe to show the jury how the 
remnants appeared in their former physical state. The jury convicted Appellant 
of tampering with physical evidence, and the court assessed a sentence of 
twenty-five years of confinement. Tex. Penal Code Ann. § 37.09(a)(1) (Vernon 
2003). Appellant appealed, arguing seven issues, four of which addressed the 
legal and factual sufficiency of the evidence establishing that he knew the 
crack pipe was evidence in the investigation and that the crack pipe was 
destroyed within the meaning of the law. Williams v. State, No. 
09-06-103-CR, 2007 Tex. App. LEXIS 892 (Tex. App.-Beaumont Feb. 7, 2007, pet. 
granted) (mem. op., not designated for publication). The court of appeals 
affirmed the trial court, concluding that a rational jury could have found 
beyond a reasonable doubt that Appellant knew the crack pipe was evidence in the 
investigation-in-progress, and that the crack pipe was destroyed within the 
meaning of the law. Id. 
We granted 
Appellant's petition for discretionary review to determine whether the court of 
appeals erred in holding that the evidence was legally sufficient to establish 
the following two points: (1) Appellant's knowledge that a crack pipe was 
evidence in the criminal investigation that was in progress, and (2) that 
Appellant destroyed evidence, specifically a crack pipe, within the meaning of 
the law. 
II. 
STANDARD OF REVIEW
In evaluating the 
legal sufficiency of the evidence, we consider the evidence in the light most 
favorable to the jury's verdict and determine whether a rational jury could have 
found the defendant guilty of all of the elements of the offense beyond a 
reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); 
Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). The 
due-process guarantee demands that we reverse and order a judgment of acquittal 
if a rational jury would entertain a reasonable doubt as to the defendant's 
guilt. Swearingen, 101 S.W.3d at 95. 
III. TEXAS PENAL 
CODE SECTION 37.09(a)(1)
Three 
elements define the offense of tampering with physical evidence: (1) knowing 
that an investigation or official proceeding is pending or in progress, (2) a 
person alters, destroys, or conceals any record, document, or thing, (3) with 
intent to impair its verity, legibility, or availability as evidence in the 
investigation or official proceeding. § 37.09(a)(1). 
The three 
elements of section 37.09(a)(1) include "two different culpable mental 
states"-knowledge and intent. Stewart v. State, 240 S.W.3d 872, 874 
(Tex. Crim. App. 2007). The statute requires the knowledge of an investigation 
and the intent to impair a thing's availability as evidence. As defined by the 
Texas Penal Code, "[a] person acts knowingly, or with knowledge, with respect . 
. . to circumstances surrounding his conduct when he is aware . . . that the 
circumstances exist." Tex. Penal Code Ann. § 6.03(b) (Vernon 2003). In contrast, "[a] person 
acts intentionally, or with intent, with respect . . . to a result of his 
conduct when it is his conscious objective or desire to . . . cause the result." 
Tex. Penal Code Ann. § 6.03(a) (Vernon 2003).
Appellant's 
indictment specifically alleged the following: "knowing that an investigation 
was in progress, to-wit: checking [Appellant] for weapons, [Appellant] 
intentionally and knowingly destroy[ed] drug paraphernalia, to-wit: a crack 
pipe, with intent to impair its verity and availability as evidence in the 
investigation." 
IV. 
KNOWLEDGE THAT THE CRACK PIPE WAS EVIDENCE 
Appellant 
challenges the legal sufficiency of the evidence establishing his knowledge that 
the crack pipe was evidence in the criminal investigation that was in progress. 
He asserts that the State failed to prove that an investigation was in progress 
in which the broken crack pipe might have served as evidence. Using the analysis 
presented in Pannell v. State, 7 S.W.3d 222 (Tex. App.-Dallas 1999, 
pet. ref'd), Appellant argues that when stepping on the crack pipe, he could not 
have intended to impair its availability as evidence in the investigation 
because he did not know that a drugs investigation was in progress. In 
Pannell, the Fifth Court of Appeals acquitted an appellant who threw 
marihuana out of a car window during a traffic investigation, concluding that 
section 37.09(a)(1) required the appellant to "be aware that the thing he 
altered, destroyed, or concealed was evidence in the investigation as it existed 
at the time of the alteration, destruction, or concealment." Id. at 
223. The court reasoned that there was no investigation, pending or in progress, 
in which the marihuana could have served as evidence. Id. at 224. 

In this case, the court of 
appeals accepted Pannell's statutory interpretation, requiring 
Appellant's awareness that the crack pipe was evidence in a criminal 
investigation that was in progress. In order to find this element satisfied, the 
court of appeals decided that the investigation-in-progress transformed from a 
weapons investigation to a drugs investigation the moment the crack pipe fell 
from Appellant's pants. Williams, 2007 Tex. App. LEXIS 892 at *7. 
Therefore, when Appellant stepped on the crack pipe, the investigation was no 
longer a weapons investigation, but was, at that point, a drugs investigation; 
and, Appellant would have been "aware" that the crack pipe was evidence in the 
investigation as it existed at the time of destruction. By categorizing the 
investigation in this way, the court harmonized the evidence destroyed, a crack 
pipe, with the investigation-in-progress, "an investigation for drugs and/or 
drug paraphernalia." Id. 
Other cases 
following Pannell have similarly analyzed the events leading up to the 
alteration, destruction, or concealment of evidence in order to classify the 
investigation. See Whitlock v. 
State, No. 12-05-00206-CR, 2006 Tex. App. LEXIS 5301, at *7 (Tex. 
App.-Tyler June 21, 2006, no pet.) (mem. op., not designated for 
publication); Dooley v. State, 
133 S.W.3d 374, 378 (Tex. App.-Austin 2004, pet. ref'd); Lumpkin v. 
State, 
129 S.W.3d 659, 663 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd). This 
effort makes sense when the indictment does not specifically allege the type of 
investigation-in-progress. See Lumpkin, 129 S.W.3d at 662; Lewis v. 
State, 56 S.W.3d 617, 624 (Tex. App.-Texarkana 2001, no pet.). 
But the indictment in this 
case is not silent as to the title of the investigation. The problem with the 
court's analysis is that it ignores the language of the indictment, which 
specifically names the investigation-in-progress a "weapons" investigation, not 
"an investigation for drugs and/or drug paraphernalia." 
(2) 
Williams, 2007 
Tex. App. LEXIS 892 at *7. We do not need to change 
the title of the investigation from a weapons investigation to a drugs 
investigation in order to find Appellant in violation of section 37.09(a)(1). 
Pannell requires that change, but the statute does not. 
Pannell grafts a fourth element onto section 37.09(a)(1), and a narrow 
reading of the statute does not support Pannell's conclusion that a 
person must be "aware that the thing he altered, destroyed, or concealed was 
evidence in the investigation as it existed at the time of the alteration, 
destruction, or concealment." Pannell, 7 S.W.3d at 223. First, contrary 
to Pannell's interpretation, the statute includes two, not three, 
mental-state requirements: the knowledge of an investigation and the intent-the 
conscious objective-to impair a thing's availability as evidence in the 
investigation. Pannell's insertion of a fourth element adds a 
mental-state requirement not present in the language of the statute. Second, 
Pannell's additional element presumes that an offender will have 
evaluated and correctly assessed a thing's evidentiary status upon its 
destruction. By not requiring an exercise in evidentiary theory, the statute is 
more reflective of investigatory reality, envisioning an offender who intends 
for, but is not necessarily aware of, the impairment of something's role as 
evidence in the investigation. 
In conclusion, 
Appellant's challenge depends upon an additional element to section 37.09(a)(1), 
introduced by Pannell. This element is not supported by the language of 
the statute and, therefore, Appellant's challenge has no statutory foundation. 
Moreover, Pannell's fourth element renders the statute impractical and 
unfit for its purpose. 
Appellant's 
argument highlights the lack of coordination within the indictment, which names 
a crack pipe as evidence in a weapons investigation. But the title of the 
investigation and the evidence destroyed need not match in an indictment 
alleging an offense under section 37.09(a)(1), as long as the offender destroyed 
a thing with the intent to impair its availability as evidence in an 
investigation that he knows is in progress. In this case, the elements of the 
offense are satisfied. During a weapons pat-down, Appellant stepped on the crack 
pipe the instant it fell into the officer's view, crushing it into pieces. 
Considering the evidence in the light most favorable to the jury's verdict, a 
rational jury could have found beyond a reasonable doubt that, knowing a weapons 
investigation was in progress, Appellant destroyed a crack pipe with the 
conscious objective to impair its availability as evidence in the 
investigation.
V. DESTRUCTION OF 
EVIDENCE 
Appellant challenges the 
legal sufficiency of the evidence establishing that he destroyed evidence, the 
crack pipe, within the meaning of the law. Though section 37.09(a)(1) provides 
for alteration, destruction, or concealment, the indictment alleged only that 
Appellant destroyed the crack pipe. Appellant argues that the crack pipe was not 
destroyed, as defined by Spector v. State, 746 S.W.2d 945 (Tex. 
App.-Austin 1988, no pet.), because the glass shards and copper mesh filter, 
admitted into evidence at trial, retained some evidentiary value.
In 
Spector, the appellant tore a marihuana cigarette in two and "threw the 
pieces toward a ditch." Id. at 946. On appeal, she asserted that the 
evidence could not have been destroyed because the contents of the cigarette 
were used to convict her. Id. at 945. In support of the charge, the 
State argued that the cigarette had been destroyed because the recovered 
contents had "lost their identity as a cigarette." Id. at 945-46. In 
its analysis, the court of appeals announced two definitions of "destroyed" and 
ultimately concluded that the torn cigarette was not destroyed. Id. at 
946. The first definition stated that "something is destroyed . . . when its 
evidentiary value is destroyed." Id. Without a loss of evidentiary 
value, changes in physical form "are mere attempts to destroy or 
alterations." Id. The second definition provided for the situation 
where a part of an object is recovered. In such a case, the evidence is 
destroyed "when the part recovered has less evidentiary value than the whole." 
Id.
In Appellant's case, the 
court of appeals determined that the collected pieces of the shattered pipe 
satisfied the test prescribed by Spector and that the crack pipe was 
destroyed. In concluding that the recovered parts had less evidentiary value 
than the whole crack pipe, the court of appeals relied heavily on its assessment 
that the crack pipe in its present state was "no longer recognizable." 
Williams, 2007 Tex. App. LEXIS 892 at *9. This assessment was supported 
by the fact that the State showed an intact crack pipe as a demonstrative 
exhibit to accompany Officer Stowe's description of a crack pipe's appearance. 
Id.
As it is 
applied, Spector's two-part definition for finding a thing "destroyed" 
under section 37.09(a)(1) inhibits the State from offering collected remains as 
evidence at trial and, in effect, requires absolute nonexistence. The first 
definition, requiring that a thing have no evidentiary value in order to be 
"destroyed," renders the State unable to offer physical evidence of the item at 
issue. If the State introduces any remains as evidence, an essential element of 
the offense disappears because, upon being admitted, the remains have 
evidentiary value, and thus, are not "destroyed." In apparent contradiction to 
the first definition, the second definition in Spector allows recovered 
parts of a destroyed thing to have evidentiary value, if they have less 
evidentiary value than the whole. But according to the analysis in that case, a 
torn cigarette thrown in a ditch does not have less evidentiary value than a 
complete cigarette. So it remains unclear how anything could be "destroyed" 
under either part of this standard when parts are recovered.
To interpret the 
use of "destroys" in section 37.09(a)(1), "we necessarily focus our attention on 
the literal text of the statute." Boykin v. State, 818 S.W.2d 782, 785 
(Tex. Crim. App. 1991). Because "every word in a 
statute has been used for a purpose" and because "each word, phrase, clause, and 
sentence should be given effect if reasonably possible," "destroys" must have an 
effect distinct from "alters" and "conceals." State v. Hardy, 963 
S.W.2d 516, 520 (Tex. Crim. App. 1997). We "first attempt to 
interpret the statute based on the plain meaning of the words used." Olivas 
v. State, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006). The Penal Code does 
not statutorily define "destroys." In the absence of statutory definitions, "we 
turn to the common, ordinary meaning of that word." Id. Webster's 
Dictionary defines "destroy" as:
1.     to demolish; to tear down; as, to 
 destroy a house, to destroy a 
 city.
2.     to ruin; to bring to naught; to spoil 
 completely; as, to destroy a scheme, to 
 destroy        a government, to 
 destroy one's happiness.
3.     to take away the 
 utility of; to make useless.
4.     to put an end to; 
 to do away with.
5.     to 
 kill.
6.     to neutralize the effect 
 of.
7.     to confute; to disprove.
Noah Webster, Webster's New Twentieth Century 
Dictionary of the English Language Unabridged 495 (2d ed. 1983).

Not one of 
Webster's definitions mentions a complete lack of physical existence. A 
demolished, ruined, or killed thing still has remains. And, contrary to the 
definition in Spector, the remains of a destroyed object can still have 
evidentiary value. We interpret section 37.09(a)(1) to mean that a destroyed 
thing has been ruined and rendered useless. This interpretation of "destroy" is, 
as required, distinct from "conceal" and from "alter," which Webster's 
Dictionary defines as: "to change; make different; modify." Id. at 52. 
Moreover, our interpretation of destroyed to mean ruined and rendered useless 
echoes a factor suggested by the State in Spector and the court of 
appeals in this case: that a thing is destroyed when it has lost its identity 
and is no longer recognizable. Williams, 2007 Tex. App. LEXIS 892 at 
*9; Spector, 746 S.W.2d at 945-46.
In this case, the 
crack pipe was ruined and rendered useless when Appellant stepped on it and 
broke it into pieces. Officer Stowe testified that he was unable to retrieve 
every piece of the shattered crack pipe, and even if the recovered pieces could 
have been glued together in an attempt to reconstruct the evidence to its former 
physical state, it would be less than a complete crack pipe. That the State 
introduced the recovered pieces only after showing a complete crack pipe as a 
demonstrative exhibit indicates that the glass shards and copper mesh filter had 
lost their identity as a crack pipe and were not recognizable as a crack pipe. 
Therefore, the crack pipe was destroyed.
VI. 
CONCLUSION
Considering the evidence 
in the light most favorable to the jury's verdict, a rational jury could have 
found beyond a reasonable doubt that Appellant destroyed a crack pipe, knowing a 
weapons investigation was in progress, with intent to impair its availability as 
evidence in the investigation. The judgment of the court 
of appeals is affirmed. 

Meyers, 
J.
Delivered: 
November 26, 2008
Publish 
1. Unless otherwise specified, all future references to 
sections refer to the Texas Penal Code. 
2. Because the name of the investigation can be considered 
an extra detail in an indictment alleging a violation under section 37.09(a)(1), 
this situation could be analyzed under surplusage law, had that rule not been 
overruled by this Court in Gollihar v. State, 46 S.W.3d 243, 256-57 
(Tex. Crim. App. 2001). See also Santana v. State, 59 S.W.3d 187, 195 
(Tex. Crim. App. 2001) (stating, "We explicitly overruled the surplusage rule 
and the Burrell exception in Gollihar."). Surplusage is an 
allegation in a charging instrument that is not legally essential to constitute 
the offense. Gollihar, 46 S.W.3d at 249. The surplusage doctrine 
stated, "allegations which are not essential to constitute the offense, and 
which might be entirely omitted without affecting the charge against the 
defendant, and without detriment to the indictment, are treated as mere 
surplusage" and may be disregarded. Whetstone v. State, 786 S.W.2d 361, 
364 (Tex. Crim. App. 1990). But, where an extra or unnecessary allegation 
described something legally essential to charge the crime, the Burrell 
exception required the State to prove the surplusage as alleged. 
Gollihar, 46 S.W.3d at 250. In Gollihar, we overruled the 
surplusage rule and the Burrell exception, and announced that the fatal 
variance doctrine would be the tool with which to resolve surplusage problems. 
Id. at 257 n.21. However, the fatal variance doctrine does not apply to 
this case. A variance exists "when there is a discrepancy between the 
allegations in the charging instrument and the proof at trial." Id. at 
246. "In a variance situation, the State has proven the defendant guilty of a 
crime, but has proven its commission in a manner that varies from the 
allegations in the charging instrument." Id. The fatal variance 
doctrine provides that a variance between the wording of the indictment and the 
proof at trial is fatal only if it prejudices the defendant's substantial rights 
and is material. Id. at 257. In this case, there is no variance 
problem. The indictment states that a weapons investigation was in progress, and 
that corresponds to Officer Stowe's trial testimony.