# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00231-CR

**Jason Gray Riquelmy, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-07-201833, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Jason Gray Riquelmy of driving while intoxicated, third offense. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003), § 49.09(b)(2) (West Supp. 2009). The district court assessed a ten-year suspended prison sentence and placed Riquelmy on community supervision for three years. Riquelmy argues that there was legally insufficient evidence to support a finding that he had been convicted of two previous DWI offenses, that there was factually insufficient evidence to support his conviction for the DWI offense at issue here, and that the district court erred in refusing to grant a new trial. We affirm the judgment of conviction.

On the evening of April 6, 2007, Officer Patrick Oborski observed Riquelmy's vehicle speeding—54 miles per hour in a 35-mile-per-hour zone—on West Sixth Street in Austin, between North Lamar Boulevard and MoPac. Oborski also observed Riquelmy moving in and out

of traffic without signaling and accelerating rapidly after stopping at a light, causing his tires to squeal. Oborski stopped Riquelmy.

When Oborski approached Riquelmy, he noticed the strong odor of alcohol on Riquelmy's breath. When asked, Riquelmy admitted to having consumed a couple of beers at a bar. Oborski also noticed that Riquelmy's eyes were bloodshot, that his speech was slurred, and that he was swaying. Based on these observations, Oborski decided to conduct field sobriety tests.

Riquelmy was either uncooperative or exhibited poor performance on each of the tests. Oborski first attempted to administer the horizontal gaze nystagmus (HGN) test, but Riquelmy refused to perform it properly, even after repeated prompting and explanation. Oborski then administered the Walk and Turn test, the One Leg Stand test, and the Rhomberg balance test, all of which indicated that Riquelmy was intoxicated. Riquelmy refused to give either a breath or a blood sample.

Riquelmy was indicted for driving while intoxicated, third offense. *See id.* §§ 49.04(a), .09(b)(2). A jury convicted Riquelmy as charged, and the district court assessed a ten-year suspended prison sentence and placed Riquelmy on community supervision for three years.

In his first issue, Riquelmy argues that there was legally insufficient evidence to support the jury's finding that he had been convicted of two previous DWI offenses. Although Riquelmy stipulated to the two prior offenses, he later argued that, due to a variance between the indictment—which described the offenses as having been committed in Travis, Texas and Harris, Texas—and the stipulation agreement—which described the offenses as having been committed in

2

Travis County, Texas and Harris County, Texas—there was legally insufficient evidence to support the jury's finding that he had been convicted of those offenses.

A variance occurs when there is a discrepancy between the allegations in the indictment and the evidence offered at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). We treat variance claims as insufficiency of evidence problems. *Id.* at 247. Only a material variance renders the evidence insufficient. *Id.* at 257. Thus, in reviewing a claim of legal insufficiency based on a variance between the indictment and the evidence, we first consider the materiality of the variance. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); *see Gollihar*, 46 S.W.3d at 257. A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject him to the risk of being prosecuted twice for the same offense. *Rogers v. State*, 200 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Fuller*, 73 S.W.3d at 253 and *Gollihar*, 46 S.W.3d at 257). The defendant bears the burden of demonstrating the materiality of a variance. *Id.* at 237 (citing *Santana v. State*, 59 S.W.3d 187, 194-95 (Tex. Crim. App. 2001)). At the same time, we take into account the more lenient standard for alleging enhancement convictions, under which the State need not allege enhancement convictions with the same particularity required for charging the primary offense. *See Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986).

Riquelmy has not met his burden of showing materiality. As set out in the stipulation agreement, Riquelmy stipulated: "I was duly and legally convicted two (2) times previously of the offense of Driving While Intoxicated." The stipulation agreement goes on to describe the details of

each offense, including that the convictions were in Travis County, Texas and in Harris County, Texas. The details also include the dates of convictions, the cause numbers, and the names of the courts. The indictment includes these identical details, including the dates of convictions, the cause numbers, and the names of the courts. The only difference is the omission of the word "County" in the indictment. In such circumstances, we cannot conclude that Riquelmy has met his burden of demonstrating that he was deprived of notice of the enhancement allegations or that the discrepancy subjected him to the risk of being prosecuted twice for the same offense. *See Rogers*, 200 S.W.3d at 237. Indeed the record shows the opposite—that Riquelmy not only had notice of the offenses but stipulated to them. Accordingly, we overrule Riquelmy's first issue.

In his second issue, Riquelmy argues that the evidence is factually insufficient to support his DWI conviction. In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and will set aside the verdict only if we are able to say, with some objective basis in the record, that the conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We cannot conclude that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See id.* at 417; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The fact-finder may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In our review, we discuss the evidence

that, according to appellant, undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Riquelmy was stopped for reckless driving, including driving nineteen miles per hour over the posted speed limit, for moving in and out of traffic without signaling, and for squealing his tires by accelerating too quickly. When Officer Oborski approached Riquelmy, he observed the strong odor of alcohol on Riquelmy's breath, and Riquelmy admitted to having consumed alcohol. Oborski also observed that Riquelmy's eyes were glassy and bloodshot and that he was slurring his speech and swaying.

The record shows that Riquelmy refused to give either a breath or blood sample and was either uncooperative or performed poorly on each of the field sobriety tests administered. Oborski began with the HGN test, but was unable to complete it. Oborski testified that "after trying to do this test over and over," he concluded that either Riquelmy "was unable to do the test because of intoxication, or he was just unwilling to do the test." Before Oborski moved on to administer the other tests, he had observed two clues of intoxication, four of which are required to show intoxication.

Oborski next administered the Walk and Turn test. Again, Riquelmy was uncooperative, complaining that the surface was not level and that his feet and shoes were bothering him. Oborski accommodated Riquelmy, offering to allow him to remove his shoes, moving his camera so that they could perform the test on a more level surface, and, at Riquelmy's request, demonstrating the entire nine-step test. Even with these accommodations, Riquelmy exhibited

5

three clues of intoxication—he broke the heel/toe position, missed heel/toe, and turned improperly. Only two clues are required to show intoxication.

Oborski next administered the One Leg Stand test. Of four possible clues of intoxication, Riquelmy exhibited three, only two of which are required to show intoxication. Riquelmy swayed, used his arms for balance, and put his foot down three times. Oborski also administered the modified Rhomberg balance test, which requires a person to close his eyes, tilt his head back, and estimate the passage of thirty seconds. Riquelmy said he could not tilt his head back due to a neck injury, so Oborski agreed to allow him to perform the test without tilting his head. Even so, Riquelmy's estimated thirty seconds was an actual forty-nine seconds, and Riquelmy exhibited a one- to two-inch sway during the test. Oborski testified that both of these responses indicate intoxication.

Viewing the entire record in a neutral light, we conclude that the evidence is factually sufficient to support the jury's determination that Riquelmy was intoxicated. Even considering the evidence that, several years earlier, Riquelmy had been treated for a cervical neck strain, that he had sustained an ankle/foot injury the year before, and that, some months after the incident, Riquelmy was diagnosed with polyarthritis, the jury was free to—and did—conclude that Riquelmy's poor performance on the field sobriety tests was the result of intoxication, not any underlying physical condition. The record as a whole, including Riquelmy's medical records, supports this conclusion. Our review of the record shows that the great weight and preponderance of the evidence—viewed in a neutral light—is consistent with the jury's verdict. *See Watson*, 204 S.W.3d at 414-17. Accordingly, we overrule Riquelmy's second issue.

6

In his third issue, Riquelmy argues that the trial court erred in refusing to grant his motion for new trial, based on the jury's not being properly instructed on the law. According to Riquelmy, the trial court misdirected the jury by instructing it to decide whether Riquelmy had been previously convicted in Travis, Texas and Harris, Texas, as set out in the indictment, when the evidence showed that those convictions had been in Travis County, Texas and Harris County, Texas. Citing rule 21(h) of the rules of appellate procedure, Riquelmy argues that a new trial is required because "the verdict is contrary to the law and the evidence." *See* Tex. R. App. P. 21(h). However, as explained above, the variance between the indictment and the stipulation agreement was not material, and the evidence presented was sufficient to support a finding that Riquelmy had been previously convicted as set out in the indictment and in the jury charge. *See Gollihar*, 46 S.W.3d at 257; *Rogers*, 200 S.W.3d at 237. Accordingly, we overrule Riquelmy's third issue.

Having overruled each of Riquelmy's issues, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 4, 2010

Do Not Publish