# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-04-00355-CR
---

**Carolyn D. Kraft, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. 630551, HONORABLE JAN BRELAND, JUDGE PRESIDING
---

### M E M O R A N D U M   O P I N I O N

Appellant Carolyn D. Kraft was convicted by a jury of the misdemeanor offense of obstructing a passageway, *see* Tex. Pen. Code Ann. § 42.03 (West 2003), and was sentenced to 180 days confinement and a $2,000 fine, both probated for two years. Appellant was required to undergo a mental health evaluation, pay supervision fees, complete community service, and avoid contact with several neighbors. We affirm the trial court's judgment of conviction.

### Factual Background

Appellant and her neighbors, the Mabrys, have had an ongoing dispute since about 1999. The Mabrys accuse appellant of attempting to block them from using the alley that runs behind their and appellant's houses. Wanda Mabry, who was seventy-eight years old at the time of

trial, testified that in July 2002 she was walking in the alley, picking up nails and other trash that had been causing flat tires when appellant cursed at her and sprayed her with a garden hose until she was soaking wet. Ms. Mabry testified that she had been sprayed by appellant at least six or seven times and that appellant frequently cursed at and insulted her. Ms. Mabry and her family members have reported the sprayings to the police several times, and Ms. Mabry said that after one report, appellant enlarged a picture of Ms. Mabry and hung it on appellant's fence with "evil, evil, evil, evil" written across it. On November 20, appellant again sprayed Ms. Mabry as she walked in the alley; Ms. Mabry knew it was appellant because she "could see her. She stands up on something and sticks her head over the fence." Ms. Mabry also testified that she frequently found roofing nails hammered through thin boards or plastic lids. Ms. Mabry has found "pieces of wood with these nails and screws under the tires of" her van or under leaves. She said, "One time I walked down the alley and there was a big rug . . . . I turned it over and it had nails under it so if a car or I had stepped on it, it would have stuck in my foot or a tire." Ms. Mabry has never seen appellant put nails in the alley, but has heard hammering in appellant's garage and believes it is appellant who is placing the nails.

Ms. Mabry testified that appellant had complained to the health department about trash on the Mabrys' property. Ms. Mabry, however, agreed that the trash was an eyesore that she had been asking her son to dispose of for a long time and said, "I don't blame her for turning me in. In fact, I thank her. I thank her because I wanted it moved and it got moved when we were ordered to move it." Ms. Mabry said she manages and maintains between forty and fifty rental properties, but denied running a business out of her home, saying, "All we do is they keep the van there and I

2

answer the phone." Ms. Mabry said that the Mabrys did not have trucks coming up and down the alley, but admitted that workmen came to the house "to get paid and so forth."

Roy Mabry, Ms. Mabry's son, testified that on or about November 20, appellant placed in the alley a number of large rocks or pieces of concrete about four inches thick. He said the rocks were such that "you couldn't drive a vehicle over those. You'd have to stop and move them out of the way." Mabry also described what he called "nail traps," roofing nails nailed through pieces of wood or plastic lids and left with the nails facing up, "covered up with leaves," "hidden under old roofing shingles," or "set in the deep grass off to the side where one would, you know, drive over them." Mabry testified that broken glass was sometimes left under the wheels of the Mabrys' van and that appellant would place a long and sharp-ended steel bar along the edge of the roadway, "[n]ot up against her fence or not in her shrubbery, but out in the alley at the very edge of the tracks where you'd have to move to avoid it. . . . It was cut very sharply at each end." Mabry testified that in 1999 he saw appellant put an object on the ground and cover it with dirt and leaves. He said, "So you're the one putting the nails out," and she answered, "Hell, yes, you son of a bitch. You cannot use this as your own private road." Mabry testified that although it was not impossible to pass through the alley, appellant had made it "extremely inconvenient" and "dangerous at times." Mabry said he "wouldn't drive down [the alley] without walking through it first to make sure there is nothing like that in the way," nor did he believe it was safe to walk a dog down the alley.

Leonard Shelton, Ms. Mabry's son-in-law for the past thirty-seven years, testified that on the morning of November 20, he saw appellant placing two large rocks in the alleyway. He said the rocks were about fourteen inches by twelve inches by four inches, not something a vehicle could

3

drive over without risking axle damage. Several garbage cans were also in the roadway, although it was not garbage day. Shelton testified that he walked down to clear the alley so his truck and trailer could get through. He moved the rocks to the side of the alley across from appellant's house and was moving the cans when appellant sprayed him in the eyes with a high-pressure hose and asked, "Who in the hell are you?" Shelton said that at the time, appellant had a chain link fence and he got a good look at appellant when she sprayed him.[1] Shelton called the police, who took a report and recommended that the Mabrys start documenting any incidents; the Mabrys then started taking pictures and videotapes of the condition of the alley, as well as saving items they found in the alley.

Shelton also testified that he often found broken glass in the alley where the Mabrys' van is usually parked. He said that although the Mabrys kept the alley behind their house clean, "There is consistently been [sic] broken Absolute vodka bottles in the alleyway over a long period of time, and I've swept up a lot of glass out of the alleyway." Shelton has heard "from Mrs. Kraft's garage someone breaking up glass." Shelton further testified that he has found paint stirrers or bottle caps with nails hammered through them in the alley, sometimes hidden in the grass or under leaves or placed under the tires of the Mabrys' van, although he has never seen appellant place broken glass or nail traps in the alley. Shelton said that he had seen appellant "on many occasions put her trash cans out in the roadway." Drivers would steer to the side to avoid them, causing them to drive over glass or nails covered by leaves. He said that he has found obstructions like broken glass, nails, or

---

[1] Appellant's son-in-law testified that he built a wooden privacy fence for appellant in early September 2002 because she was having trouble with neighbors walking up and down the alley. Appellant asserts that Shelton's testimony that she still had the chain link fence in November 2002, as well as other alleged inconsistencies, shows that he was "somewhat truth-challenged."

4

concrete pieces in the alley almost every day. Shelton testified that he and the Mabrys had incurred more than $1,000 in costs to repair tire damage over about a three-year time period. Although he has called the police to report loud parties thrown by other neighbors, he did not believe those neighbors or their guests left the glass, nails, or concrete in the alley. He testified that although he felt safe walking in the alley, he did not think it was safe for Ms. Mabry.

The State introduced into evidence a videotape made by the Mabrys in late 2002 consisting of several short clips taken over several months. The alley has houses on both sides with individual fences running along and garages facing the roadway, which is two unpaved tracks with grass along both sides and running down the middle. The first and longest clip, taken October 28, 2002, shows Ms. Mabry slowly walking in the alley behind appellant's house while appellant looks over the top of her fence. Ms. Mabry stops and calls out, "I see you," and appellant says she is going to spray Ms. Mabry until she leaves the alley and sprays water at Ms. Mabry, who hops out of the way and laughs. Ms. Mabry lingers in the alley while appellant sprays intermittently over the fence. Ms. Mabry then hurries past, laughing at appellant, and appellant stands up and sprays Ms. Mabry as she runs. Appellant and the Mabrys yell at each other, and although the words are hard to discern, the tone used by both parties can be characterized as taunting. Ms. Mabry also moves a large metal pole and several garbage cans away from the roadway, tossing them onto the grass next to appellant's fence. In the next clip, appellant is seen placing five garbage cans about half in the roadway and half in the grass between the road and the fence. She also places several long, metal poles right at the edge of the roadway. In the third clip, appellant is seen tossing large rocks or pieces of concrete in the track of the road, and her garbage cans have been placed in the roadway. In the fourth clip,

5

appellant is again carefully placing the metal poles right along the roadway; her garbage cans are placed partially in the road. In the final clip, dated in January 2004, appellant moves two garbage cans away from the roadway and then pulls her hat down over her face as she walks in her gate. Throughout the clips, the Mabrys can be heard talking about appellant and laughing.

In addition to the video, the State introduced into evidence several photographs, including one taken at the end of 2002 showing more than ten large rocks or concrete blocks in the track of the road and several garbage cans placed in the lane of traffic. Two others taken in March or April 2002[2] and May 2002 show garbage cans placed squarely in the roadway. Roy Mabry said that when garbage is collected, the cans are left "away from the driveable part of the alley," and he has never seen the garbage collectors leave cans in the middle of the roadway.

Appellant did not testify at trial. However, she called Ron Romero, manager of garbage collections for the City of Austin, as a witness. Romero testified that he did not have record of problems with flat tires or obstructions that would prevent the garbage trucks from collecting trash. Romero also testified that if there was an obstruction that could be cleared, the garbage collectors probably would not report a problem and would simply pick up or move the obstruction. However, he thought a crew faced with repeated obstructions and flat tires in a particular roadway would probably make a report.

Byron Kwapil, appellant's son-in-law, testified that he was frequently at appellant's house and that he had seen debris collect in the alley, but he never saw anything blocking the road.

---

[2] At trial, the parties mostly referred to the photograph numbered State's exhibit 9 as being dated April 29, 2002. However, appellant's counsel stated once at trial that it was dated March 29, and the date stamp on the photograph appears to say "MAR 29 '02."

Jerry Kraft is married to appellant, and although they have lived separately for about twenty years, he often spends time at appellant's house and has seen "a lot of obstructions in that alleyway." He said, "I don't know if this has been testified to before, but there is a carwash and it also serves as a point where day labor is picked up and dropped off, so there is a lot of pickup trucks hanging around there. . . . So more than the average alleyway, that alleyway is prone to having items in the alleyway." Kraft said that Ms. Mabry had complained to him about appellant and that he has seen Ms. Mabry "kind of standing around, looking at the alleyway, sort of patrolling," and standing outside of appellant's gate at night. He believed Ms. Mabry provoked appellant into spraying her.

Appellant was charged with "obstruct[ing] a highway, street, sidewalk, entrance, exit to which the public or a substantial group of the public has access, and any other place used for the passage of persons and vehicles, to wit: 5201 Avenue F." *See* Tex. Pen. Code Ann. § 42.03.

## Discussion

Appellant asserts in seven points of error that the evidence is insufficient; that the trial court erred in admitting certain evidence, denying her requests for limiting instructions, and denying her objection to the State's argument; and that she received ineffective assistance of counsel.

### *Evidentiary Complaints*

In her third point of error, appellant asserts that the trial court erred in admitting the following evidence under rule 404(b): (1) Ms. Mabry's testimony that she was sprayed with water in July 2002; (2) the videotape of appellant spraying Ms. Mabry in October 2002; (3) the three photographs taken by the Mabrys in the Spring of 2002. In her fourth point of error, appellant complains that the trial court erred in denying her requests for limiting instructions related to that

7

evidence. In her fifth point of error, appellant argues that the trial court erred in admitting certain evidence that she asserts was irrelevant and, in some cases, hearsay.

We review a trial court's decision on the admission of evidence for an abuse of discretion and will not reverse a ruling that falls within a "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *see Paredes v. State*, 129 S.W.3d 530, 534-35 (Tex. Crim. App. 2004) (holding that trial court's admission of testimony was within zone of reasonable disagreement). Erroneous admission of evidence is non-constitutional error and must be disregarded unless it effects substantial rights of the defendant. Tex. R. App. P. 44.2(b); *Perez v. State*, 113 S.W.3d 819, 830-31 (Tex. App.—Austin 2003, pet. ref'd). In determining whether a defendant's substantial rights were harmed, we ask whether the jury's decision was adversely affected by the error, considering the entire record, the nature of the evidence supporting the verdict, the nature of the error, and any connection the error might have had with other evidence. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

Appellant asserts that the trial court should not have allowed Ms. Mabry to testify about being sprayed with water in July 2002, arguing that the evidence was admitted in violation of rule 404(b) of the rules of evidence.[3] At trial, appellant objected that the testimony was evidence of an extraneous offense, and the State countered that the obstruction occurred not only on November 20, 2002, but was a series of events that went on over time, including appellant's spraying people to prevent them from moving obstructions she had placed in the alley. The State further asserted that

---

[3] Rule 404(b) provides that evidence of extraneous bad acts is not admissible to prove character and that the defendant acted in conformity therewith. Tex. R. Evid. 404(b). Such evidence may be admissible for other purposes, however, such as to show motive, intent, plan, knowledge, identity, or lack of mistake. *Id.*

the testimony was admissible under rule 404(b) to show a lack of mistake or accident, intentionality, or identity. The court overruled the objection and allowed the evidence.[4]

Part of the State's theory was that appellant not only obstructed the alley by placing items in and along the roadway, but also by spraying people as they walked in the alley and attempted to remove the road hazards. Having reviewed the record in its entirety, we cannot hold that the trial court's determination that the spraying incidents might be part of the offense alleged falls outside the zone of reasonable disagreement. *See Green*, 934 S.W.2d at 102. Nor can we hold that the evidence about the July incident was not relevant to a "fact of consequence apart from its tendency to prove conduct in conformity with character." *See Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004). The trial court's ruling that the evidence was admissible does not fall outside the zone of reasonable disagreement. *See Green*, 934 S.W.2d at 102. We overrule appellant's objection to the testimony about the July 2002 spraying.

When the State sought to introduce the videotape of the October 2002 spraying, appellant objected pursuant to rule 404(b) and argued that the taped incidents were staged and the result of the Mabrys taunting appellant. The State responded that the tape should be admitted as proof of the offense itself, arguing that spraying someone with a hose as they walked down an alley might amount to obstruction of a roadway, and under rule 404(b). The court admitted the tape, saying "if there is conduct on there that's not the offense itself, then I think that conduct certainly shows an absence of mistake and identity at a minimum." As with Ms. Mabry's testimony about the

---

[4] The trial court allowed the testimony as evidence of the offense itself, but expressed concern that the State was muddying its case, saying, "I think it's obvious that she's not been charged with the water—she's not charged with this."

July spraying, we cannot hold that the trial court's decision that the videotape of the incident was relevant to the offense itself or under rule 404(b) falls outside the zone of reasonable disagreement. *See id*. Therefore, we overrule appellant's objection to the videotape of the October 2002 spraying.

Finally, appellant complains of the admission of photographs taken in March or April 2002 and in May 2002, both of which show a garbage can in the roadway of the alley. Appellant objected that it had not been shown that appellant placed the cans in the road and that the photographs might have been staged. Appellant further objected, saying, "That's March 29th of '02. If that is the date that we're contending, you know, it's not fair because on or about November the 20th does mean on or about November the 20th. These acts, although they occur within the statute of limitations, are multiple and we think that they should not come [in]." The State responded that appellant's objections went to the weight of the evidence, not the admissibility. The court admitted the photographs as evidence of the offense itself, not under rule 404(b).

Although the State's witnesses did not testify that they saw appellant place the cans in the road on the dates the photographs were taken, that goes to the weight of the evidence, not to its admissibility. In other words, appellant's assertion that the Mabrys had set her up raised a credibility issue for the jury, not an admissibility question under rule 404(b). *See Foster v. State*, 779 S.W.2d 845, 861 (Tex. Crim. App. 1989) ("A lack of positive identification of an object, such as a weapon, connected with the alleged crime affects the weight of the object as evidence, rather than its admissibility."); *Scott v. State*, 165 S.W.3d 27, 52 (Tex. App.—Austin 2005, pet. granted) ("Any inconsistencies between her testimony and that of other witnesses went to the weight of the evidence, not its admissibility, and was a matter for the jury to resolve."); *Caddell v. State*, 123 S.W.3d 722,

10

727 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (objections regarding alleged breach in chain of custody, "without affirmative evidence of impropriety, go to the weight of the evidence rather than to its admissibility"); *Thompson v. State*, 59 S.W.3d 802, 808 (Tex. App.—Texarkana 2001, pet. ref'd) ("objections based on remoteness go to the weight, not the admissibility, of the testimony"). We overrule appellant's complaints related to the photographic evidence, and we overrule appellant's third point of error.

Appellant next complains that the trial court should have given the jury limiting instructions related to the evidence discussed above. "When extraneous offenses are admitted for a limited purpose, the defendant is entitled, on timely request, to an instruction by the trial judge to the jury limiting the jury's consideration of the extraneous offenses to those purposes for which they are admitted." *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994). However, the trial court allowed the evidence both under rule 404(b) and as evidence of the offense itself.[5] As discussed above, it was not an abuse of discretion for the trial court to admit the evidence as evidence of the offense itself, and therefore, limiting instructions were not required. We overrule appellant's fourth point of error.

Finally, in her fifth point of error, appellant argues that the trial court erred in admitting the following evidence that she asserts was irrelevant and, in some cases, hearsay: (1) Ms. Mabry's testimony about a mediation she and appellant attended; (2) Shelton's testimony that the alley's address was 5201 Avenue F; (3) Shelton's testimony that the police told the Mabrys to make

---

[5] Appellant requested limiting instructions at the time the evidence was admitted, but the trial court stated that it believed such instructions would be better handled in the jury charge.

the videotape; (4) Shelton's testimony that the Mabrys had been getting flat tires for about three years; and (5) the videotaped incidents.

Appellant contends that the trial court erred in allowing Ms. Mabry to mention that she and appellant had attended a mediation in hopes of settling their dispute.[6] However, Jerry Kraft, called to testify by appellant, referred to the mediation during cross-examination without objection by appellant.[7] Thus, any error was rendered harmless by Mr. Kraft's later testimony about the mediation. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Appellant next asserts it was error to allow Shelton to testify on direct examination that the police instructed the Mabrys to document appellant's activities in the alley. Again, however, Shelton testified without objection on cross-examination that "Mrs. Kraft was doing something and we went and got the video camera because we had been instructed by the police to record what she was doing to us." Because the same evidence was later admitted without objection, any error in allowing Shelton to testify about the instructions given to the Mabrys by the police was harmless. *See id*. Appellant further complains

---

[6] Ms. Mabry testified that she had not tried to speak to appellant "except when we were in mediation," that she had not attempted to resolve her differences with appellant aside from the mediation, and that the mediation led to a resolution. Appellant objected to Ms. Mabry's first reference to mediation, the State responded that it went to identity and lack of mistake, and the trial court overruled the objection. After Ms. Mabry testified that a resolution came out of the mediation, appellant objected again. Outside of the jury's presence, the trial court learned that the mediation occurred after the incident alleged in the indictment and then sustained appellant's objection. Appellant did not move for an instruction to disregard.

[7] The State asked Mr. Kraft whether "other avenues of reconciliation" had been explored, and he answered that appellant and the Mabrys had been ordered to mediation at least once, and that the parties signed an agreement with the mediator as well as another agreement that "ran for six months of certain restraints" on the parties. Appellant did not object to Mr. Kraft's initial answers related to mediation, but when the State asked whether the mediation had resolved the conflict, appellant objected, and the trial court sustained the objection.

12

that the trial court should not have allowed Shelton's testimony about what he believed the address of the alley to be because the alley's address was outside of Shelton's personal knowledge and irrelevant. Shelton was asked, "If you had to give somebody the address of this alley, what would you say?" Appellant objected first that "[a]n alley doesn't have an address," and then argued that if Shelton was testifying about "someone else's property, he's got to be an expert." The trial court overruled the objection, and Shelton answered, "5201 Avenue F." Initially, we note that appellant's objections on appeal do not entirely comport with her arguments on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence."). Further, viewed in context, the record shows that Shelton did not testify as an expert or about information outside his personal knowledge, but instead explained how he would describe the alley behind his mother-in-law's house to someone. The trial court did not abuse its discretion in allowing Shelton's testimony about the address of the alley.

Even if we were to assume that the trial court erred in allowing the testimony about the address, tire repairs, and police instructions, any such error was harmless in light of the record as a whole. *See Perez*, 113 S.W.3d at 831. Considering the entire record, the evidence supporting the verdict, the alleged error, and any connections between the error and other evidence, we hold that there is little likelihood that the error, if any, had a substantial and injurious influence on the jury's verdict. *See Morales*, 32 S.W.3d at 867.

Appellant argues that the trial court should not have allowed Shelton's testimony about the $1,000 in tire-repair costs over three years because (1) that information was outside Shelton's personal knowledge because he had only worked for the Mabry business for the last year

and (2) the testimony about three years of repairs went beyond the two-year statute of limitations. Again, we note that appellant's trial objection does not comport with her arguments on appeal. *See* Tex. R. App. P. 33.1(a)(1). At trial, appellant did not object on personal-knowledge or statute-of-limitations grounds, but objected only that the testimony was irrelevant. However, even if appellant preserved her arguments, Shelton had been married to Ms. Mabry's daughter for thirty-seven years and he "knew about" appellant before beginning to work for the business. As a long-time family member, Shelton could easily have learned about the on-going issues related to the alley, even before beginning to work for the family business. Because appellant did not object to Shelton's testimony on grounds that he lacked personal knowledge, the basis of his knowledge was never explored. Although the first year of the three-year period was outside the two-year statute of limitations, it was relevant to explain the Mabrys' continuing trouble with glass and other obstructions in the alley. Shelton's testimony supported the allegations that appellant had left objects in the alley with the purpose of flattening the Mabrys' tires and was relevant to the charged offense. We overrule appellant's complaint related to Shelton's testimony about the tire repairs.

Finally, appellant argues the videotape is irrelevant because the incidents caught on tape "appear to have been a set-up, with much taunting and laughing" by the Mabrys and did "not fairly portray the ongoing dispute" between appellant and the Mabrys. We disagree that the incidents are irrelevant. Roy Mabry denied that they had staged or provoked the incidents caught on videotape, and even if the Mabrys had provoked appellant, their behavior can also be seen on the tape and goes to the weight of the evidence, not its relevance. *See* Tex. R. Evid. 901(b)(1) (evidence may be authenticated by witness testimony that "matter is what it is claimed to be"). Further, other than the October spraying, the other incidents caught on tape do not have the same appearance of

14

possible provocation. Instead, appellant seems to be either ignoring or initially unaware of the camera as she places the rocks or garbage cans in or near the roadway. We overrule appellant's complaint related to the videotape, and we overrule her fifth point of error.

### *Sufficiency of the Evidence*

In her first two points of error, appellant argues that the evidence is legally and factually insufficient to support the conviction. In particular, she asserts that the State failed to prove (1) that the alleyway is a passageway within the meaning of section 42.03 of the penal code, (2) that there was any obstruction of the alleyway, (3) that appellant caused any obstruction, or (4) that the alleyway was open to the public or a substantial group of the public.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In reviewing the factual sufficiency, we view all of the evidence in a neutral light, comparing the evidence in support of a disputed fact with evidence tending to disprove that fact. *Johnson*, 23 S.W.3d at 6-7. We will set aside a verdict for factual insufficiency only if the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *Id.* at 11. We will reverse a fact-finder's determination only if the record indicates manifest injustice; otherwise, we will accord due deference to the determinations of fact, particularly those involving the weight and credibility of the evidence. *Id*. at 9. The jury is the sole judge of the weight and credibility of witness testimony. *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). The finder of fact may accept or

15

reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must reconcile any evidentiary conflicts. *Id*. We determine the sufficiency of the evidence by viewing the cumulative effect of all the evidence, not each fact in isolation. *Id.* at 297.

A person commits the offense of obstructing a highway or other passageway if she intentionally, knowingly, or recklessly obstructs a "highway, street, . . . entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction." Tex. Pen. Code Ann. § 42.03(a)(1). "Obstruct" is defined as "to render impassable or to render passage unreasonably inconvenient or hazardous." *Id*. § 42.03(b).

The evidence brought forth by both sides shows that the public used the alley, which runs between North Loop Blvd. and East 52nd St. There was testimony that the alley was used for garbage services, people loitered at the nearby carwash and in the alley, and the alley was generally used by the residents of the area. The photographic and videotape evidence shows several garages facing the alley and garbage cans all along the alley. Indeed, one of appellant's defensive arguments was that the Mabrys were unreliable witnesses because other people used the alley and surely would have complained had there been an ongoing campaign of obstruction. Thus, the evidence is legally and factually sufficient to support a finding that the alley was a passageway and was used by the public or a significant portion of the public.

As for the jury's determination that the alley was obstructed, the evidence is likewise legally and factually sufficient. The video and photographs show garbage cans and large rocks or pieces of concrete placed partially or entirely in the roadway of the alley, and witnesses testified that

16

the rocks were such that vehicles could not go over them safely. There was also testimony that a driver attempting to drive to the side to avoid the garbage cans risked running over nail traps or sharp-ended metal poles, and that when the Mabrys attempted to move obstructions out of the alley, appellant sprayed them with her hose. Appellant is seen on tape moving large rocks or concrete pieces and garbage cans into the roadway, and there was testimony that appellant was seen on other occasions placing similar obstructions in the alley and that she admitted placing obstructions to stop the Mabrys from using the alley. Although the objects left in the alley were not of a nature to make the alley physically impassable, the evidence is sufficient to show that the obstructions made use of the alley "unreasonably inconvenient or hazardous." *See* Tex. Pen. Code Ann. § 42.03(b); *Haye v. State*, 634 S.W.2d 313, 314-15 (Tex. Crim. App. 1982) (woman who stood on sidewalk, forcing pedestrian off sidewalk into mud to go around, obstructed passageway); *Robles v. State*, 803 S.W.2d 473, 476-77 (Tex. App.—El Paso 1991, no pet.) (although witness could have stepped over or around protestors to enter building, evidence showed entrance was impassable and defendant caused inconvenience); *Smith v. State*, 772 S.W.2d 946, 953 (Tex. App.—Dallas 1989, pet. ref'd) (evidence sufficient where protestor blocked sidewalk, forcing passerby to step up onto small wall).

We further hold that the evidence is legally and factually sufficient to support a finding that it was appellant causing the obstructions. Appellant can be seen on videotape placing garbage cans and concrete or rocks partially or fully in the roadway of the alley. The Mabrys testified that appellant sprayed them with water when they attempted to move obstructions or walk down the alley. The Mabrys testified that nails and broken glass were left in the alley and that they heard hammering or glass breaking from appellant's property, and there was testimony that appellant

17

admitted to placing obstructions in the alley to stop the Mabrys from using the alley. Whether viewed in a neutral light or the light most favorable to the verdict, the evidence is sufficient to show that appellant placed obstructions in the alley.

Finally, we consider appellant's complaints related to whether she obstructed 5201 Avenue F and whether the alley is a passageway under the meaning of section 42.03. Appellant was charged by information with "obstruct[ing] a highway, street, sidewalk, entrance, exit to which the public or a substantial group of the public has access, and any other place used for the passage of persons and vehicles, to wit: 5201 Avenue F." The jury charge tracked that same language. Appellant first notes that an alley is not mentioned in section 42.03 and that no Texas case holds that blocking an alley violates section 42.03, arguing that the facts are insufficient to make a decision on this "first impression" issue. Appellant also attacks "how poorly the State's case was pled" because the information alleged obstruction of 5201 Avenue F and did not contain language that the passageway blocked was the alley behind that address. The State counters that "5201 Avenue F" was not a substantive element of the offense and need not be proven.

Although we agree that the State could have pled the offense with more clarity simply by alleging that appellant obstructed "the alley behind 5201 Avenue F" or language to that effect, we hold that the evidence is sufficient to support the jury's verdict. Appellant essentially argues that the proof varied from the charged offense, but the court of criminal appeals has held that "when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). A variance between indictment and evidence is fatal only if it is

18

material and prejudices the defendant's substantial rights. *Id*. (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). That determination is made by considering (1) whether the charging instrument as written sufficiently informed the defendant of the charge so that she was able to prepare an adequate defense and (2) whether prosecution under the deficient charging instrument might subject the defendant to the risk of a later prosecution for the same crime. *Id*. (quoting *Sprick*, 233 F.3d at 853). Even if the charging instrument contains unnecessarily specific allegations, a variance between the allegations and the evidence at trial will not require reversal unless it operated to the defendant's surprise, prejudiced her rights, or would subject her to later prosecution for the same offense. *Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001).

In this case, the precise location alleged to have been blocked was not an essential element of the offense. *See Gollihar*, 46 S.W.3d at 258 (misidentification of stolen item did not impair defendant's ability to prepare defense); *Rickerson v. State*, 138 S.W.3d 528, 530 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (although indictment incorrectly identified victim, it sufficiently informed defendant of charge and there was no indication that defendant was misled by indictment or surprised by proof at trial). Appellant did not seek to quash the indictment and never argued that she was surprised by the State's proof at trial. *See Bowker v. State*, 481 S.W.2d 141, 142 (Tex. Crim. App. 1972); *Lopez v. State*, 654 S.W.2d 521, 524 (Tex. App.—Corpus Christi 1983, pet. ref'd). Indeed, appellant seemed to know exactly the area in dispute and focused her defense on whether the alley was in fact obstructed. Further, because appellant may "avail [herself] of the entire record and not merely the charging instrument" if need be, there is no risk that appellant could be

19

charged again later for the same offense. *See Santana*, 59 S.W.3d at 195. Appellant has not demonstrated surprise or prejudice with regard to any variance. *See id*.

Furthermore, "5201 Avenue F" can be read in a broader sense to encompass the alley behind the address. It does not offend common sense to interpret a street address to mean the house as well as its entrances and exits. *See Loera v. State*, 14 S.W.3d 464, 469 (Tex. App.—Dallas 2000, no pet.) (walkway and driveway enabled public access to house and therefore, under limited purposes of statute, evidence was sufficient to walkway was "public place"). The alley runs behind 5201 Avenue F and is used for entry to the house and its garage. There was testimony that glass was left in the alley near the Mabry's property and under the wheels of their van. Therefore, the evidence is not inconsistent with the offense as charged. We overrule appellant's complaints related to the allegation that she obstructed 5201 Avenue F.

The evidence is both legally and factually sufficient to support the jury's guilty verdict. We overrule appellant's first and second points of error.

### Objection to the State's Argument

In her sixth point of error, appellant argues that the trial court erred in overruling her objection to the State's argument that she asserts commented on her failure to testify.

During closing arguments, appellant largely focused on whether appellant obstructed 5201 Avenue F. Appellant agreed that an alley is a passageway, but argued that because the State pleaded not that she obstructed the alley, but instead a specific address, the State had not proved its case. Appellant also argued that she and the Mabrys had been feuding for years and that the Mabrys had taunted her and "were setting her up and they got the kind of response that they wanted." On

20

rebuttal, the State argued that vehicle entry to a house can be obstructed, saying "[w]hat was obstructed was the driveway, the passageway," and also argued that using the Avenue F address was the most accurate way to describe the alley. The State then turned to appellant's argument that the Mabrys set her up, saying that even if the Mabrys had taunted appellant, it did not justify her behavior. The State said, "But you'll notice, because it can't be said, that the defense never says she didn't do it." Appellant objected, "I'm going to object, Your Honor. That's clearly improper." The trial court responded, "I'm going to let the jury listen to the arguments and make of them what they choose." On appeal, appellant asserts that the statement "the defense never says she didn't do it" was an improper comment on her failure to testify that justifies the reversal of the conviction.

A comment on a defendant's failure to testify violates the defendant's constitutional right against self-incrimination. *See* U.S. Const. art. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005). In determining whether the State made an impermissible comment, we view the statement "from the jury's standpoint[,] and the implication that the comment referred to the defendant's failure to testify must be clear." *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify," taking into account the context in which the comment was made. *Id*. "It is not sufficient that the language might be construed as an implied or indirect allusion." *Id*.

Assuming that appellant's general objection, "That's clearly improper," is sufficient to preserve this issue for review, *see Najera v. State*, 955 S.W.2d 698, 702 (Tex. App.—Austin 1997, no pet.) (objection that opening statement was "wholly improper" was not sufficiently specific to

21

preserve issue for review), appellant is not entitled to reversal based on the State's remark. The State argues that, viewed in the context of closing arguments by both sides, its remark was intended not to refer to appellant's failure to testify, but instead to rebut appellant's defensive theories—that the State had not proved that she obstructed 5201 Avenue F or alleged that the alley was obstructed and that the Mabrys set her up by taunting her and were unreliable witnesses, as demonstrated by the dearth of other complaints to the police about the alley—by addressing those theories and by noting in passing that none of the theories was that appellant did not obstruct the alley. We discourage even indirect or implied allusions to a defendant's failure to testify. However, in its context, we hold that this remark was not one that the jury would necessarily or naturally take as a comment on appellant's decision not to testify. *See Bustamante*, 48 S.W.3d at 765; *see also Ortiz v. State*, 144 S.W.3d 225, 235 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (State argued that there was no testimony about particular kind of gun and that if other gun had been present, defendant would have said so; court held that in context, comment referred to defendant's pretrial statements already in evidence, not to defendant's failure to testify); *Villarreal v. State*, 79 S.W.3d 806, 812-13 (Tex. App.—Corpus Christi 2002, pet. ref'd) (comment that defendant had not offered reasonable explanation for evidence was in answer to defendant's jury argument and was at most indirect allusion to failure to testify); *Kan v. State*, 4 S.W.3d 38, 45 (Tex. App.—San Antonio 1999, pet. ref'd) ("What did Defendant put on there to show that sexual contact did not happen?" held to be part of summary of evidence, not specific to defendant's involvement in any illegal conduct, and did not call to jury's attention to lack of evidence only defendant provide); *Saldivar v. State*, 980 S.W.2d 475, 502 (Tex. App.—Houston [14th Dist] 1998, pet. ref'd) (comments that defendant did not give satisfactory

22

explanation about alleged embezzlement and did not report earlier alleged rape were not improper; first summarized evidence and second was rhetorical question "based on a reasonable deduction from the evidence").

Further, even if the comment did comment on appellant's failure to testify, we are confident that any such error is harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a) (if constitutional error is found, conviction must be reversed unless court of appeals determines beyond a reasonable doubt that error did not contribute to conviction or punishment). The State's remark was brief and made in passing, the State did not make any further comment, direct or indirect, on appellant's failure to testify, and in the context of both sides' argument, the remark seems to address appellant's defensive theories. The charge instructed the jury not to consider appellant's decision not to testify in its deliberations or hold it against her. Considering the record as a whole and the remark in the context in which it was made, we hold beyond a reasonable doubt that the comment, if erroneous, did not contribute to the conviction or punishment. *See Wimbrey v. State*, 106 S.W.3d 190, 192-93 (Tex. App.—Fort Worth 2003, pet. ref'd) ("nobody is disputing there's a robbery" held to be harmless beyond a reasonable doubt because it was off-hand comment not intended to taint trial, State never again mentioned that robbery was undisputed, and trial court said, "This is argument. It's not evidence. Let's move on," thus de-emphasizing comment's importance); *Villarreal*, 79 S.W.3d at 813 (charge instructed jury not to hold defendant's election not to testify against him and comment "was not so blatant that it rendered an instruction to disregard ineffective"). We overrule appellant's sixth point of error.

23

### *Ineffective Assistance of Counsel*

In her seventh point of error, appellant asserts that she received ineffective assistance of counsel because her attorney did not object to the jury charge, which lacked the limiting instruction that the trial court had indicated it would include, and because he conceded that the alleyway was a passageway within the meaning of section 42.03 of the penal code, thus conceding an element of the offense.

A defendant asserting that he received ineffective assistance of counsel must show both that counsel's performance fell below an objective standard of reasonableness and prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). The defendant has the burden to overcome the strong presumption that counsel's performance fell within the range of reasonable professional assistance and bringing forth a record showing that counsel's performance was not based on sound trial strategy. *Blevins*, 18 S.W.3d at 271. We will not speculate as to counsel's possible trial strategies. *See Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). If there is no evidentiary hearing held on the issue of effectiveness, the defendant's burden is difficult to meet, and we will rarely hold that counsel's assistance was ineffective. *Blevins*, 18 S.W.3d at 271-72 (quoting *Thompson*, 9 S.W.3d at 813). We evaluate counsel's performance from his or her perspective at trial, not in hindsight, and we consider the totality of the representation, rather than focusing on isolated acts or omissions. *Mayhue*, 969 S.W.2d at 510.

During the State's evidence, appellant's counsel objected to evidence he characterized as improper evidence of extraneous offenses. The trial court overruled his objections after much discussion about whether the evidence was extraneous offense evidence or evidence of the charged offense itself. Counsel then requested a limiting instruction, and the trial court stated that it believed such an instruction was better suited for the jury charge. When the trial court prepared the jury charge, no such instruction was included, and appellant's counsel did not object or re-urge his request. During his closing arguments, counsel said, "I think that an alleyway is a passageway. But, unfortunately, the State of Texas failed to plead that. They pled that she obstructed not a passageway or an alley, but 5201 Avenue F." Counsel went on to press his arguments that (1) the State's evidence did not match the charged offense and (2) it was impossible for appellant to have obstructed an address. Appellant argues that these two alleged deficiencies rendered counsel's assistance ineffective because there could be no valid strategy behind them.

Initially, we note that we have already determined that the evidence of which appellant complains was admitted both as rule 404(b) evidence and as evidence of the offense itself and that therefore a limiting instruction was not necessary. Counsel was active and zealous in his representation, objecting, pursuing and pointing out inconsistencies by the State's witnesses, and furthering his defensive theories. Considering the totality of the representation provided, rather than focusing on these two isolated instances, *see id.*, appellant has not shown that counsel's performance fell outside of the range of reasonable professional assistance or prejudiced her case. *See Thompson*, 9 S.W.3d at 812. Furthermore, appellant did not file a motion for new trial or obtain an evidentiary hearing to consider counsel's reasoning behind the alleged deficiencies, and the record before us

25

cannot adequately reflect trial counsel's motives. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Blevins*, 18 S.W.3d at 271-72. We will not second-guess or speculate as to counsel's reasoning and trial strategy. *See Mayhue*, 969 S.W.2d at 511. The alleged deficiencies of which appellant complains are not so prominent or damaging as to render counsel's performance, when viewed as a whole, ineffective. We overrule appellant's seventh point of error.

## Conclusion

We have overruled each of appellant's points of error. We therefore affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: January 19, 2006

Do Not Publish