In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-459 CR


____________________



DAMON S. KIEL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 93234






MEMORANDUM OPINION


 Appellant Damon S. Kiel was indicted for possession of a controlled substance in
an amount of at least one gram and less than four grams. See Tex. Health & Safety
Code Ann. § 481.115(c) (Vernon 2003). A jury convicted Kiel and assessed punishment
at seventeen years of confinement. (1) In this appeal, Kiel raises five issues for our
consideration. We affirm.


The Evidence


 Trooper Jack Crawford testified that on June 29, 2004, while he was working traffic
control on Highway 69, he observed Kiel driving without wearing a seat belt. Trooper
Crawford decided to stop Kiel, so Trooper Crawford activated his overhead lights and
followed Kiel. Kiel pulled into the driveway of an automobile dealership, and Trooper
Crawford pulled in behind him, approached the vehicle, and asked Kiel to step to the rear
of the vehicle. (2) Trooper Crawford then told Kiel the purpose of the traffic stop and
checked Kiel's driver's license and vehicle registration. Trooper Crawford noticed that
Kiel "was immediately nervous, seemed very hyper, . . . overly excited and not - I don't
mean excited as in a good mood, just overly nervous. As he handed me his driver's
license, he was shaking uncontrollably. . . ." Trooper Crawford opined that "you can
definitely distinguish . . . between somebody who just doesn't want a seat belt ticket and
somebody who typically has something else going on." According to Trooper Crawford,
Kiel paced nervously and was "constantly putting his hands in his pocket and taking them
out, stretching - which, again, is another sign of nervousness - sign of fight or flight,
whether they're either trying to fight you or run from you."


 Suspecting that Kiel's vehicle contained something illegal,Trooper Crawford asked
Kiel whether the vehicle contained various illegal items and asked for permission to search
the vehicle. Trooper Crawford testified that when he asked Kiel about illegal narcotics,
Kiel's 

 demeanor changed from staring at the floor and answering, "No", to when
I specifically asked about cocaine, he still replied, "No", but he snapped up. 
He snapped his head up and looked at me and replied, "No, sir", which,
again, through training is another occasion of what potentially you could be
looking specifically for if they answer your questions differently.


Kiel told Trooper Crawford that he did not object to having his vehicle searched, but he
wanted to return to the vehicle first.

 Trooper Crawford testified that Kiel became more nervous as the stop continued,
and Trooper Crawford began to feel threatened, so he attempted to detain Kiel. According
to Trooper Crawford, Kiel "immediately began to actively resist." When Trooper
Crawford attempted to place Kiel in handcuffs, Kiel jerked away, so Trooper Crawford
attempted to bring Kiel to the ground. Kiel managed to escape, and he began running
toward his vehicle. After Kiel again ran toward his vehicle, Trooper Crawford took out
his pepper spray and sprayed Kiel two or three times, but the spray did not have an
immediate effect. Trooper Crawford decided to allow Kiel to reach the vehicle, and Kiel
began to flee by pulling the vehicle further into the parking lot of the automobile
dealership. While following Kiel, Trooper Crawford saw him get out of his vehicle and
dive beneath a parked vehicle on the car lot. At that point, Trooper Crawford drew his
pistol and ordered Kiel to the ground, but Kiel refused to comply. Trooper Crawford
eventually placed Kiel in handcuffs and read him his Miranda warnings.

 Trooper Crawford observed a clump of paper towels beneath the vehicle under
which Kiel had dived. Trooper Crawford testified that the clump of paper towels was
within Kiel's reach. According to Trooper Crawford, when he asked Kiel what he had
thrown from his vehicle, Kiel "denied any knowledge of what I was talking about
whatsoever." When Trooper Crawford unraveled the clump of paper towels, he saw a
substance he suspected was cocaine. Trooper Crawford did not find narcotics in Kiel's
vehicle or on Kiel's person. Trooper Crawford booked Kiel into the jail and placed the
substance in a secured evidence locker. Trooper Stephanie Davis testified that she took
the evidence to the crime laboratory for analysis. Camille Stafford, a criminalist in the
drug section of the Texas Department of Public Safety Crime Lab, testified that she
analyzed the substance and determined it was cocaine. Stafford testified that the cocaine
weighed 23.71 grams.

Issue Two


 In his second issue, Kiel argues the "evidence was legally insufficient to sustain the
conviction due [to] the absence of affirmative links connecting the Appellant to possession
of the contraband." In performing a legal sufficiency review, an appellate court must view
all of the evidence in the light most favorable to the verdict to determine whether a rational
fact finder could have found the essential elements of the offense beyond a reasonable
doubt. Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004) (citing Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

 "To prove unlawful possession of a controlled substance, the State must first prove
appellant exercised actual care, control and management over the contraband and second,
that appellant had knowledge the substance in his possession was contraband." Nixon v.
State, 928 S.W.2d 212, 215 (Tex. App.--Beaumont 1996, no pet.) (citing King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App. 1995)). The State need not prove exclusive
possession of the contraband, since control over contraband may be jointly exercised by
more than one person. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App.
1985); State v. Derrow, 981 S.W.2d 776, 779 (Tex. App.--Houston [1st Dist.] 1998, pet.
ref'd). However, "mere presence at a place where contraband is being used or possessed
by others does not justify finding that a person is in joint possession or is a party to an
offense." Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.--Houston [1st Dist.] 2002,
pet. ref'd).

 When an accused is not in exclusive possession of the location where contraband
is found, additional independent facts and circumstances must affirmatively link him to the
contraband. Nixon, 928 S.W.2d at 215. An affirmative link may be established through
either direct or circumstantial evidence, and it must show that the accused's connection to
the contraband was more than fortuitous. Poindexter v. State, 153 S.W.3d 402, 405-06
(Tex. Crim. App. 2005). Factors which tend to establish affirmative links include: 

 (1) the contraband was in plain view;

 (2) the accused was the owner of the premises in which the contraband was
found;

 (3) the contraband was conveniently accessible to the accused;

 (4) the contraband was found in close proximity to the accused;

 (5) a strong residual odor of the contraband was present;

 (6) paraphernalia to use the contraband was in view or found near the accused;

 (7) the physical condition of the accused indicated recent consumption of the
contraband in question;

 (8) conduct by the accused indicated a consciousness of guilt;

 (9) the accused had a special connection to the contraband;

 (10) the place where the contraband was found was enclosed;

 (11) the occupants of the premises gave conflicting statements about relevant
matters; and

 (12) affirmative statements connect the accused to the contraband.


Nixon, 928 S.W.2d at 215. "It is . . . not the number of links that is dispositive, but
rather the logical force of all the evidence, direct and circumstantial." Evans v. State, No.
PD-1911-05, 2006 WL 2686552, at *2 (Tex. Crim. App. Sept. 20, 2006).

 In this case, Trooper Crawford found the cocaine within Kiel's reach, beneath a car
under which Kiel had dived moments before. Both Kiel's unusually nervous demeanor
during what began as a routine traffic stop and his attempt to evade detention indicated
consciousness of guilt. We conclude that sufficient affirmative links exist in this case. 
Compare Nixon, 928 S.W.2d at 215. The evidence is legally sufficient to support the
verdict. Accordingly, we overrule issue two.

Issue One


 In his first issue, Kiel contends the prosecutor "conducted improper voir dire of the
jury when he used a 'hypothetical' fact situation in his voir dire regarding the Appellant
in possession of the drugs having thrown down the contraband to the ground, where the
'hypothetical' was factually specific to the case on trial." Kiel complains of the following
exchange that occurred during the State's voir dire:

 [PROSECUTOR]: Do you think I'm in possession of this pen right now?
(Indicating)


 [A JUROR]: Yes.


 [PROSECUTOR]: Pretty obvious; right? Right here in my hand. Anyone
disagree . . . that I'm in possession of this pen? I know it's a silly example, but
anyone disagree?


 [UNKNOWN JURORS]: No.


 [PROSECUTOR]: Okay. Why? Why do you think I'm in possession?


 [JUROR]: You're holding it in your hand.


 . . . .


 [PROSECUTOR]: . . . I'm in control of it. It's very obvious. Now,
(indicating). Still think I'm in possession? It's what you feel?


 [JUROR]: No.


 [PROSECUTOR]: No. Well, did I exercise control by throwing it?


 [JUROR]: Yes.


 [PROSECUTOR]: Okay. So, I'm still - - By the definition, I'm still in
control; correct?


 [JUROR]: Yes.


 [PROSECUTOR]: I exercised - - 


Kiel's counsel lodged the following objection: "Your Honor, I'm going to object to that. 
That's an attempt to commit the prospective juror to a specific fact circumstance." The trial
court sustained counsel's objection and instructed the panel to disregard the prosecutor's
comment.

 We first address the State's contention that Kiel's issue on appeal does not comport
with his trial objection. Although Kiel's statement of his first issue appears to raise the issue
of whether the State's hypothetical that was factually identical to the case was improper,
Kiel's argument under issue one also discusses the State's alleged attempt to commit the jury
to a particular factual scenario. This discussion comports with Kiel's objection. Therefore,
we find that Kiel has not waived the issue.

 As previously noted, the trial court sustained Kiel's objection to the prosecutor's
comments and instructed the panel to disregard them. Assuming without deciding that the
prosecutor's comments constituted error, the trial court's instruction to disregard cured any
error and rendered it harmless. See Cates v. State, 752 S.W.2d 175, 176 (Tex. App.--Dallas
1988, no pet.); Tex. R. App. P. 44.2. Therefore, we overrule issue one.

Issues Three and Four


 Issues three and four assert that the evidence is legally and factually insufficient
"due to a fatal variance" because the indictment alleged possession of one to four grams
of cocaine, but the evidence adduced at trial indicated the cocaine weighed twenty-three
grams. We address these issues together.

 We must first determine whether a material variance existed between the indictment
and the evidence at trial. See Fuller v. State, 73 S.W.3d 250, 253 (Tex. Crim. App.
2002). In analyzing whether a variance is material, we must determine whether the
indictment informed Kiel of the charge against him sufficiently to allow him to prepare an
adequate defense, as well as whether prosecution under the allegedly deficient indictment
would subject Kiel to the risk of another prosecution for the same crime. See Gollihar v.
State, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). The burden of demonstrating
surprise or prejudice resulting from the variance rests with Kiel. See Santana v. State, 59
S.W.3d 187, 194 (Tex. Crim. App. 2001). Nothing in the record demonstrates that Kiel
was surprised at trial by the evidence that the amount of cocaine recovered was twenty-three grams, or that Kiel was unable to prepare a defense. Evidence supporting the offense
alleged in the indictment was adduced at trial; that is, the evidence was legally and
factually sufficient to show that Kiel possessed at least one to four grams of cocaine. The
evidence simply showed that he possessed more cocaine than alleged in the indictment. (3) 
Furthermore, we see no possibility that Kiel will be subjected to the risk of another
prosecution for this offense. Therefore, we find Kiel has failed to establish that the
variance was material. We overrule issues three and four.

Issue Five


 In issue five, Kiel contends "[t]he case should be reversed for a new punishment
hearing due to the prosecutor's improper argument . . . urging the jury to punish the
appellant with a significant sentence in order to send a message to the community." Kiel
complains of the following portion of the State's closing argument: 

 Well, y'all, he's rewarding you all - this community - our citizens
that live in this place by being in possession of not an insignificant amount
of cocaine again. 


 . . . . 


 So, when you go back there and you make that decision, you get to
act as a representative sample of your community and say, what is this worth
in my community, what is it worth to me and my loved ones - the people
around this area? Do we care enough about our community to hold
somebody responsibility [sic] for bringing this junk into our homes - into our
lives because that's what he's doing. He's affecting all of us in this area
bringing this garbage. And not once y'all, twice. This is the second time.


To preserve error on appeal, a defendant must object to the allegedly improper jury
argument comment and pursue the objection until the trial court rules adversely. 
Threadgill v. State, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); Cockrell v. State, 933
S.W.2d 73, 89 (Tex. Crim. App. 1996). The record reflects Kiel's counsel did not object
to the prosecutor's closing argument. Therefore, nothing has been preserved for our
review. See Cockrell, 933 S.W.2d at 89; Tex. R. App. P. 33.1(a). We overrule issue five
and affirm the judgment of the trial court.

 AFFIRMED.



 ____________________________

 STEVE MCKEITHEN 

 Chief Justice




Submitted on September 21, 2006

Opinion Delivered October 18, 2006

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ. 
1. Kiel was sentenced as a repeat offender.
2. Trooper Crawford indicated that his vehicle's on-board camera recorded the stop of
Kiel, and the tape was played at trial.
3. Kiel does not contend he was punished for possessing more than four grams of
cocaine.