**Opinion filed February 20, 2026**



## In The

# Eleventh Court of Appeals

_____

### No. 11-24-00022-CR

_____

### JOHNATHAN IRVIN MCKISSICK, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-21-0521-CR**

### M E M O R A N D U M   O P I N I O N

Johnathan Irvin McKissick appeals his conviction for the first-degree felony offense of injury to a child. *See* TEX. PENAL CODE ANN. § 22.04(a), (e) (West Supp. 2025). The jury assessed Appellant's punishment at confinement for ninety-nine years in the Correctional Institutions Division of the Texas Department of Criminal Justice. Appellant presents three issues on appeal. In his first two issues, Appellant challenges the sufficiency of the evidence to support a finding that he committed the

offense against the child victim, alleging a material variance in both the name of the victim and the manner and means alleged and the proof at trial. In his third issue, Appellant argues that the State violated its duty under Article 39.14 of the Code of Criminal Procedure by failing to provide Appellant with newly discovered evidence until after his motion for new trial was overruled by operation of law. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2025). We affirm.

*Background Facts*

Appellant was in a relationship with the mother of A.N., the 21-month-old child victim, in February 2021.[1] The child's mother, D.R., testified that, at the time of the incident, the child's father was involved in the sale of drugs, and that she and Appellant remained in contact with him to obtain money and drugs. During their on-again, off-again relationship, D.R. would get back together with the child's father, and in the days before the incident, D.R. had been with him.

On or about February 24, 2021, Appellant and D.R. reconnected, but D.R. dropped A.N. off to stay with his father. D.R. testified that, on the afternoon of February 26, Appellant used methamphetamine, and later that evening, he began pushing her to pick up A.N. because she "needed to be a mother to him." The two discussed getting a hotel for the night but disagreed about accepting money from A.N.'s father to pay for it because he and D.R. had recently been intimate. Eventually, they agreed to accept the money but leave A.N. with his father. When they arrived at the father's residence, D.R. stated that Appellant angrily drove off after she exited the car. After she retrieved the money for the hotel, Appellant returned but demanded that she bring the child with them. D.R. testified that, at the

---

[1]The reindictment identifies the child victim by the child's first and last name at the time of the incident, before the child was adopted. To protect the identity of the child, we will refer to the child and his mother by their initials. We note, however, that Appellant's first issue involves an argument that the child was either misidentified in the reindictment or that the evidence supporting the identification of the child victim was insufficient.

2

time she placed A.N. in the car with Appellant, he did not appear to be physically unwell or bruised in any way.

Appellant and D.R. drove to a hotel where video evidence showed that the child was able to hold his head up when they arrived at around 1:00 a.m. on February 27. Footage from a hotel security camera facing the parking lot and the door of Appellant's and D.R.'s hotel room showed D.R. leaving and, soon after, Appellant opening the door of the room to step out and look over the parking lot while holding the child. The footage then showed Appellant returning to the room and appearing to slam the child down onto the bed while the mother was retrieving items from the car.

D.R. testified that when she returned to the room, the child appeared to be fine, and she got in the shower. After she was done, she found that Appellant had left with the child, despite D.R. telling him it was too late for the child to be out. Just after 1:20 a.m., Appellant was shown on camera leaving the hotel room with the child, who appeared to be unable to hold his head up without assistance. Video surveillance from a rest stop showed Appellant and the child arriving at approximately 2:33 a.m. The child had a hat on, and when Appellant tried to put him on the ground, he was unable to stand on his own. Soon after, Appellant left the rest stop cradling the child at 2:38 a.m.

D.R. fell asleep before Appellant and the child returned, but at some point, she awoke to find them both in bed and the child throwing up. Appellant took the child to the restroom while D.R. stayed in bed and fell back asleep. Some time later, D.R. awoke to the child throwing up again, but this time, when Appellant took the child to the restroom, D.R. went too. D.R. testified that this is the first time she observed bruising on the child's head, and that, while in the bath, the child had a blank gaze as if "[h]e wasn't there." D.R. stated that, without assistance, the child was unable to hold himself up and slid down into the tub.

3

D.R. wanted to take the child to the emergency room but testified that Appellant told her they could not due to CPS concerns. D.R. insisted, and footage from the hotel security camera showed Appellant and D.R. leaving the hotel with the child just after 9:00 a.m. on February 27. While en route to the hospital, the couple stopped when they saw D.R.'s mother standing outside her home. The photograph from that stop showed bruising and a scratch on the child's head that D.R. testified had not been there the night before. After arriving at the hospital, Appellant dropped off D.R. and the child but he never returned. Text messages reflected that Appellant did not want law enforcement to know that he had been with them.

Medical records showed that the child suffered a traumatic brain injury, respiratory failure, significant blood loss, a large bleed around the left side of the brain, a laceration on the back of the brain, a ligament injury to the spinal column, paralysis of the right side of the face, retinal hemorrhages, and bruising to the face. A consulting physician testified that the child's injuries and the circumstances of his admission reflected substantial evidence of physical abuse. The child was in the intensive care unit, intubated and unconscious for several days after the incident. Approximately three weeks after his initial admission to the hospital, the child was transferred to a rehabilitation center where he received treatment for around two months. As of trial, the effects on the child from the incident included a limp, impaired vision and speech, seizures, muscle and nerve damage, and noticeably impaired cognitive function. He also continued to receive substantial therapy every week.

D.R.'s rights to the child were terminated as a result of this event and "other proceedings." The child was adopted by the paternal grandparents of one of D.R.'s other children, and the adoptive grandmother testified at trial that the child's name was changed from "A.A.N., Jr." to "A.N.N." after his adoption.

4

Appellant was charged with intentionally and knowingly causing serious bodily injury to a child younger than fourteen years of age. The case proceeded to a jury trial and Appellant urged the defensive theory that he did not cause the child's injuries. The jury found Appellant guilty of the first-degree felony of injury to a child.

At the close of trial, Appellant signed a certification of discovery expressly waiving the right to receive any additional discovery pertaining to the case, and later, he timely submitted a motion for new trial, which was overruled by operation of law.

*Analysis*

*Sufficiency of the Evidence – Variance between the Victim's Name as Alleged and as Proven*

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction based upon a variance between the child victim's name as alleged in the reindictment and the proof offered at trial. Using the same initials, but using fictious names that we have selected because the indictment used the child's birth name, the reindictment, dated June 8, 2021, alleged that the child's name was "Allen Norris." The child's name at the time of the reindictment was "Allen Adam Norris, Jr." After the child was adopted, which occurred after the reindictment but before trial, his name changed to "Adam Norris Nelson."

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense

beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

"A variance occurs when the proof at trial differs from the allegations in the charging instrument." *Delarosa v. State*, 677 S.W.3d 668, 680 (Tex. Crim. App. 2023) (citing *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). "Only a 'material' variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient." *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018). A variance is material when it fails to adequately inform the

6

defendant of the charge against him or subjects him to the risk of being prosecuted again for the same crime.  *Id.*; *Gollihar*, 46 S.W.3d at 257.

The Court of Criminal Appeals has recognized three categories of variance: 1) a statutory allegation that defines the offense, which is a variance that is not subject to the materiality analysis or is always material; 2) a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution, which is a variance that is sometimes material; and 3) a non-statutory allegation that has nothing to do with the allowable unit of prosecution, which is never material.  *Ramjattansingh*, 548 S.W.3d at 547.  As noted in *Ramjattansingh*, a variance concerning the complainant's name is a "second" category variance that is sometimes material.  *Id.* at 547 n.24 (first citing *Byrd v. State*, 336 S.W.3d 242, 244 (Tex. Crim. App. 2011); and then citing *Fuller v. State*, 73 S.W.3d 250, 251, 254 (Tex. Crim. App. 2002)).  In *Fuller*, the Court of Criminal Appeals noted that the victim's name is not a statutory element of the offense of injury to an elderly individual.  73 S.W.3d at 251, 253–54.  Thus, the child victim's name in this case was not a statutory element of the offense.  *See id.* at 253–54.

Appellant asserts that the there was a material variance between the reindictment and the evidence at trial because he could be subject to later prosecution for the same offense due to the name used to identify the victim.[2]  Specifically, he argues that the evidence was insufficient to prove that he injured A.N. as charged in the reindictment because the evidence fails to establish that the victim named in the reindictment was the child and not the child's father.[3]  Additionally, Appellant

---

[2]Appellant does not assert that he was inadequately informed of the charge against him with respect to the identify of the alleged victim.  In that regard, he notes in his brief that the name alleged in the reindictment to identify the child victim was the child's birth name.

[3]Using the same fictious names we utilized previously with the child's same initials, the child's name at the time of the reindictment was "Allen Adam Norris, Jr."  The name of the father of the child is "Allen Adam Norris, Sr."  The reindictment alleged that the child's name was "Allen Norris."  After the

contends that the child's name change after he was adopted could further confuse the issue of identifying the victim named in the indictment and leave him vulnerable to subsequent prosecution.

Appellant's contention that he could be later tried for the same offense of injury to a child is without merit. There was evidence presented at trial establishing that the child victim identified at trial was the same child alleged in the reindictment. The child's mother testified that she had a child whom she named after the child's father, and she identified that child as the victim of the offense. The child's paternal grandmother also testified that the child was her son's child, and that both bore the same name. Moreover, the reindictment alleged that the victim of the offense was "a child 14 years of age or younger." The child's adoptive parent clarified that the child's name was changed from one with the initials "A.A.N.", consistent with the reindictment, to a name with the initials "A.N.N." after his adoption. The corresponding adoption order that was part of the records admitted into evidence reflected that it was issued over a year after Appellant's reindictment. Additionally, the medical records for the child relating to the incident and the subsequent care he required in the years following reflect both the name provided on the reindictment and the child's name after adoption.

After reviewing the record, we are convinced that the State's use of a name with the initials "A.N." to identify the child victim in the reindictment does not expose Appellant to the risk of double jeopardy for the offense with which the State charged him or could subsequently charge him for his conduct. Article 21.07 of the Code of Criminal Procedure provides that "[i]n alleging the name of the defendant, or of any other person necessary to be stated in the indictment, . . . [w]hen a person is known by two or more names, it shall be sufficient to state either name." CRIM.

---

child was adopted, which occurred after the reindictment but before trial, the child's name changed to "Adam Norris Nelson."

8

PROC. art. 21.07 (West 2009). The child victim in this case was born with a name bearing the initials "A.A.N.," consistent with the name of the alleged victim, and his name was changed via adoption after Appellant's reindictment.

When the charging instrument uses one name but the State proves at trial that the complaining witness goes by a different name, defendants are not exposed to the risk of double jeopardy when the record clarifies that the name in the charging instrument and the complaining witness are one and the same person. *See Santana v. State*, 59 S.W.3d 187, 195–96 (Tex. Crim. App. 2001) (holding that the defendant did not face double jeopardy because, "if prosecuted again, [he] may avail himself of the entire record and not merely the charging instrument"); *Gollihar*, 46 S.W.3d at 258 (holding that "entire record, not just indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution"). Here, the record contains ample evidence to clarify that the name alleged in the charging instrument is the same child victim. Because the evidence at trial establishes that the child victim was the very same person alleged to have been injured in the reindictment, though known by a different name, any variance in this regard would be immaterial. *See Byrd*, 336 S.W.3d at 247. Further, the evidence at trial does not support Appellant's contention that he could possibly be subject to a second prosecution for the same offense. *See id.* at 246. Accordingly, we overrule Appellant's first issue.

*Sufficiency of the Evidence – Variance in the Manner and Means Alleged versus the Evidence Presented at Trial*

In his second issue, Appellant asserts that his conviction also rests upon a material variance due to the State's failure to prove an act pleaded in the reindictment. The reindictment states:

> The duly organized GRAND JURY of Ector County, Texas presents in the District Court of Ector County, Texas, that in Ector County, Texas, JOHNATHAN IRVIN MCKISSICK, hereafter styled

the defendant, heretofore on or about the 27th day of February, 2021 did then and there intentionally and knowingly cause serious bodily injury to [A.N.], a child 14 years of age or younger, by striking the head of the complainant against an object unknown to the Grand Jury.

And it is further presented in and to said Court that a deadly weapon, to-wit: an object unknown to the Grand Jury, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the defendant used or exhibited said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited, or did then and there intentionally and knowingly cause serious bodily injury to [A.N.], a child 14 years or age or younger by hitting on or about the head or body of the complainant with the hand of the defendant.

And it is further presented in and to said Court that a deadly weapon, to-wit: the hand of the defendant, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the defendant used or exhibited said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited.

As relevant to this case, a person commits the offense of injury to a child if he intentionally or knowingly causes serious bodily injury to a child. *See* PENAL § 22.04(a)(1). Serious bodily injury is a "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." PENAL § 1.07(a)(46). Injury to a child is a result-oriented offense that requires a mental state that relates not to the specific conduct but to the result of that conduct. *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985). A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. PENAL § 6.03(a) (West 2021). "A person acts knowingly, or with

knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b).

Appellant asserts that the State alleged that the injury was inflicted with "an object unknown to the Grand Jury" but that it failed to prove the fact at trial. Additionally, Appellant contends that the State's alternative manner and means of "by hitting on or about the head or body of the complainant with the hand of the defendant" was defective because it was placed in the middle of the deadly weapon allegation and not set apart. Appellant argues that the reindictment does not adequately allege that the offense was committed with his hand, and, while the charge allowed jurors to find Appellant committed the act by either his hand or an unknown object, the conviction rests upon a material, statutory variance with insufficient proof regarding the method of committing the offense pled in the reindictment.

In *Johnson v. State*, the defendant was charged with aggravated assault by causing serious bodily injury. 364 S.W.3d 292, 298 (Tex. Crim. App. 2012). The charging instrument alleged that the defendant committed the offense by "hitting the victim with his hand" and "twisting the victim's arm with his hand." *Id.* But the evidence at trial established that the defendant injured the victim by throwing the victim against a wall. *Id.* The court held that this variance involved an immaterial non-statutory allegation, noting that "[w]hat caused the victim's injury is not the focus or gravamen of this offense. . . . 'The precise act or nature of conduct in this result-oriented offense is inconsequential.'" *Id.* (quoting *Landrian v. State*, 268 S.W.3d 532, 533, 537 (Tex. Crim. App. 2008)).

Here, Appellant's second issue involves non-statutory allegations like those in *Johnson*. The variance, if any, is immaterial because Appellant was charged with injury to a child, a result-oriented offense. *See Alvarado*, 704 S.W.2d at 39. As was the case in *Johnson*, the precise way that Appellant committed the injury to the child

is inconsequential. *See Johnson*, 364 S.W.3d at 298. What caused the injury to the child is not the focus of the offense; the focus of the offense is that the child victim was injured. *See id.* In fact, The Court of Criminal Appeals noted in *Johnson* that in an injury-to-a-child case, "a jury [does] not necessarily have to agree on what underlying acts caused the child's injuries," as the underlying acts involve the manner and means of committing the offense. *Id.* at 296 (citing *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). Thus, the jury was only required to agree that Appellant caused serious bodily injury to A.N. in one of the manners alleged. *See Stuhler*, 218 S.W.3d at 717.

Several witnesses at trial testified that the child did not appear to be injured before returning to the care of his mother and Appellant. Video evidence from the hotel just after their arrival shows Appellant appearing to slam the child onto the bed while the mother was out of the room. The child's mother also testified that she noticed A.N.'s symptoms manifesting within the hours after the surveillance video was captured. Additionally, a medical expert consulted for the child's treatment testified that his injuries were consistent with inflicted trauma. The only conflicting testimony came from Appellant's grandmother, who described his relationship with the child as caring and loving.

The jury had the opportunity to hear the testimony at trial, and it was the jury's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We defer to the jury's determination and presume that the jury resolved the inconsistencies in the testimony in favor of the verdict. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. We conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that Appellant caused serious bodily injury to A.N. Accordingly, we overrule Appellant's second issue.

*Alleged Violation of Article 39.14*

In Appellant's third issue, he asserts that the State failed to uphold its duty under Article 39.14 of the Code of Criminal Procedure by failing to disclose evidence until after trial. CRIM. PROC. art. 39.14(a). This issue arises from the State's postjudgment disclosure of a video, with no sound, taken by the Ector County Sheriff's Department, which depicted an interview between an officer and Appellant's cellmate.[4] The video was obtained by the Ector County Sheriff's Office after the close of trial while Appellant's motion for new trial was pending, but before the motion was denied by operation of law. TEX. R. APP. P. 21.8(c). The State disclosed the video to the defense approximately nine months after the final judgment. Appellant contends that the disclosure of the video months after the close of trial deprived him of the opportunity to object to the late production, and because the video is silent, this court must find harm—as the data is insufficient to conduct a meaningful harmless-error analysis.

The State contends that on January 26, 2024, Appellant expressly waived his right to receive any future discovery in the case. Additionally, the State contends that, regardless of Appellant's waiver, the video cannot be considered favorable or material so as to require its disclosure. On this point, the State contends that Appellant failed to demonstrate why the State would be duty-bound to turn it over and how any harm resulted from its failure to do so prior to the denial of Appellant's

---

[4]We note that the video and correspondence surrounding it are not currently part of the appellate record. Thus, we are relying on the parties' description set out in their briefing. Appellant filed an Agreed to Motion to Supplement the Clerk's Record with these matters. To date, we have not ruled on the motion to supplement the appellate record. We now overrule Appellant's motion to supplement the record. In this regard, it does not appear that the matters which Appellant seeks to be supplemented into the appellate record were presented to the trial court prior to it losing plenary power over Appellant's conviction. "[A]n appellate court's review of the record is generally limited to the evidence that was before the trial court at the time of the trial court's ruling." *Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007) (citing *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004)). The rules for supplementing the appellate record cannot be used to create new evidence. *Id.*

13

motion for new trial. Finally, the State asserts that the trial court would not have abused its discretion in denying Appellant's motion for new trial even if it had received the evidence prior to the denial of the motion by operation of law because, since the video is silent, it would not support a recognized ground upon which relief in the form of a new trial must be granted.

Texas courts have routinely held that the statutory rights created by Article 39.14 are subject to waiver. *See Rodriguez v. State*, 630 S.W.3d 522, 524–25 (Tex. App.—Waco 2021, no pet.) (concluding that appellant waived her complaint under Article 39.14(a) by failing to request a continuance); *Foyt v. State*, 602 S.W.3d 23, 49 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *see also Glover v. State*, 496 S.W. 3d 812, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding that because the rights provided under Article 39.14 are neither systematic nor fundamental, they may be subject to wavier by failing to properly object to their alleged violation). Thus, the State is correct in its assertion that Appellant waived his rights under Article 39.14 to receive further discovery.

Moreover, the Second Court of Appeals recently held that a postconviction habeas proceeding is the proper mechanism for raising the issue of a violation under Article 39.14 involving evidence which, due to the timing of the disclosure, did not come before the trial court. *Hucabee v. State*, No. 02-24-00058-CR, 2025 WL 353056, at *6 n.7 (Tex. App.—Fort Worth January 30, 2025, pet. ref'd) (mem. op., not designated for publication) (citing *Martinez v. State*, No. 02-23-00032-CR, 2023 WL 7852122, at *5 (Tex. App.—Fort Worth Nov. 16, 2023, pet. ref'd) (mem. op., not designated for publication)). The court concluded that, without evidence of the violation in the record, it was unable to consider any additional evidence submitted by Appellant. *Id.* (citing *Thompson v. State*, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981) (holding that articles attached to briefs and not presented in bill of exception were not properly before appellate court as evidence). We agree that a

postconviction habeas proceeding is the correct avenue to address the complaint presented by Appellant in his third issue.

We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


February 20, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.